UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, acting through the United States Department of Agriculture<br><br>Plaintiff<br><br>v.<br><br>REYES DE JESUS, IRIS LOTTI DE JESUS, and MILAGROS LOTTI DE JESUS, as known members of the Estate of MIRIAM LOTTI DE JESUS a/k/a MYRIAM LOTTI DE JESUS; JOHN DOE and RICHARD ROE as unknown members of the Estate above-mentioned<br><br>Defendants | CIVIL NO.<br><br><br>Foreclosure of Mortgage |

**COMPLAINT**

TO THE HONORABLE COURT:

COMES NOW the United States of America -acting by the United States Department of Agriculture- through the undersigned attorney, who respectfully alleges and prays as follows:

1.  Jurisdiction of this action is conferred on this Court by 28 U.S.C. Section 1345.

2.  Plaintiff, United States of America, is acting through the United States Department of Agriculture, which is organized and existing under the provisions of the Consolidated Farm

and Farm Service Agency Act, 7 U.S.C. §1921 et seq. Plaintiff is the owner and holder of one (1) promissory note that affects the three (3) properties described further below.

3. Said promissory note is for the amount of **$16,170.00**, with annual interest of 8.5%, subscribed on May 9, 1979. *See Exhibit 1.*

4. For the purpose of securing the payment of said promissory note, a voluntary mortgage was executed on the same date, in favor of the plaintiff, under the terms and conditions stipulated and agreed therein, through Deed No. 79. *See Exhibit 2.*

5. According to the Property Registry, MIRIAM LOTTI DE JESUS is the owner of record of the real estate properties subject of this case. Said properties are described -as they were recorded in Spanish- as follows:

> A) RUSTICA: Parcela de terreno radicada en el barrio Rucio de Peñuelas, Puerto Rico, compuesta de dos cuerdas, sesenta y tres y medio, céntimos de otra, equivalentes a una hectárea, tres áreas y diecisiete centiáreas, en colindancias por el ESTE, con un camino vecinal; por el OESTE y SUR, antes, con Julio Toro y hoy con Don Dionisio Lotti Luchessi; y por el NORTE, con don Julio y Mandel Toro, hoy don Dionisio Lotti Luchessi.
>
> Property 2,025, recorded at page 100 of volume 51 of Peñuelas, Property Registry of Ponce, Puerto Rico, Section II.
>
> *See Title Search attached as Exhibit 3.*

B) RUSTICA: Parcela de terreno radicada en el barrio Rucio de Peñuelas, Puerto Rico, con cabida de doce y medio céntimos de cuerda, más o menos, equivalentes a cuatro áreas, noventiuna centiáreas y treinta miliáreas, en lindes por el NORTE y ESTE, con terrenos de don Dionisio Lotti Luchessi; y por el SUR y OESTE, con el resto de la finca de donde se segregó, propiedad de don Efraín Santos y Santos y hoy de don Dionisio Lotti Luchessi.

Property 2,027, recorded at page 110 of volume 51 of Peñuelas, Property Registry of Ponce, Puerto Rico, Section II.

*See Title Search attached as Exhibit 4.*

C) RUSTICA: Finca radicada en el Barrio Rucio del término municipal de Peñuelas, compuesta según sus títulos de treinta y seis cuerdas veinticinco céntimos, pero mensurada por el agrimensor don Alberto Rodríguez Anfriani resultó contener una cabida total de treinta y dos cuerdas ochocientos noventiocho milésimas, iguales de doce hectáreas, noventa áreas, sesentiseis centiáreas y siete miliáreas, bajos los puntos y colindancias actuales que figuran en el plano levantado por dicho ingeniero, siendo sus colindancias las siguientes: por el NORTE, linda con terrenos de Sucesión A.J. Bartolomei, los de Eligio de Jesús y de Sucesión de Alfredo Toro, dividido éstos últimos por un camino vecinas; por el SUR, colinda con tierras de Eliseo Santos, de Efraín Santos; por el ESTE colinda con tierras de Efraín Santos, Sucesión A.J. Bartolomei y una quebrada; y por el OESTE, colinda con tierras de Edelmiro Díaz Santos, Santiago Santos y Sucesión de Alfredo Toro, separadas por el camino vecinal en la cuchilla. Contiene esta finca una casa de madera y zinc para vivienda y otra casa de madera y zinc, para agregado.

Property 2,031, recorded at page 140 of volume 51 of Peñuelas, Property Registry of Ponce, Puerto Rico, Section II.

*See Title Search attached as Exhibit 5.*

3

6. The title searches attached to this complaint confirm the registration of the mortgage liens that secure the loan obligations between the plaintiff and the defendants. *See Exhibits 3, 4, and 5.*

7. MIRIAM LOTTI DE JESUS a/k/a MYRIAM LOTTI DE JESUS passed away on March 24, 2006. *See Exhibit 6.*

8. By information and belief, the known members of the Estate of MIRIAM LOTTI DE JESUS a/k/a MYRIAM LOTTI DE JESUS are the following individuals:

   (a) REYES DE JESUS (mother);

   (b) IRIS LOTTI DE JESUS (sister), and;

   (c) MILAGROS LOTTI DE JESUS (sister).

9. JOHN DOE and RICHARD ROE are included as possible unknown heirs to the Estates mentioned before.

10. Codefendants are jointly and severally responsible for all amounts owed to plaintiff, arising from the loan obligations subscribed.

11. According to *P.R. Laws Ann.,* Article 959, (Sec. 2787), defendants have 30 days to either accept or reject their participation in the Estate(s) to which they lawfully belong. If no answer is received within said period, their participation shall be deemed as accepted.

12. It was expressly stipulated in the notes evidencing the indebtedness that default in the payment of any part of the

covenant or agreement therein contained will authorize the plaintiff, as payee of said notes, to declare due and payable the total amount of the indebtedness evidenced by said notes and proceed with the execution and/or foreclosure of the mortgages.

13. The defendant party herein, jointly and severally, has failed to comply with the terms of the mortgage contracts by failing to pay the installments due on all notes until the present day, and that after declaring all the indebtedness due and payable, the defendant party owes to the plaintiff, according to the Certification of Indebtedness included herein as *Exhibit* 7, the following amounts:

    a) On the $16,170 Note:

        1) The sum of $16,170.00, of principal;

        2) The sum of $50,702.32, of interest accrued as of September 8, 2020, and thereafter until its full and total payment, which interest amount increases at the daily rate of $4.2817;

        3) Plus, insurance premium, taxes, advances, late charges, costs, court costs expenses, disbursements and attorney's fees guaranteed under the mortgage obligation.

14. The indebtedness evidenced by the aforementioned notes is secured by the mortgages over the properties described in

this complaint.

15. Plaintiff is unable to provide a "Status Report pursuant to Servicemembers Civil Relief Act" for codefendants since we do not know their social security numbers.

16. The real estate properties mentioned before are subject to the following liens in the rank indicated:

(A)  Property 2,025:

1) Recorded liens with preference or priority over mortgage herein included:

-None.

2) Junior Liens with inferior rank or priority over mortgage herein included:

-None.

(B)  Property 2,027:

1) Recorded liens with preference or priority over mortgage herein included:

-None.

2) Junior Liens with inferior rank or priority over mortgage herein included:

-None.

(C)  Property 2,031:

1) Recorded liens with preference or priority over mortgage herein included:

-None.

2) Junior Liens with inferior rank or priority over mortgage herein included:

    a) MORTGAGE: Constituted by Miriam Lotti De Jesús, in favor of Bearer, in the original principal amount of $16,800.00, with 15% annual interests, due on August 10, 1985, constituted by deed #68, executed in Bayamón, Puerto Rico, on August 10, 1984, before Notary Public Héctor A. Sostre Narváez, recorded at overleaf of page 31 of volume 91 of Peñuelas, property number 2,031, 8th, inscription.

    b) MORTGAGE: Constituted by Miriam Lotti De Jesús, in favor of La Coop. de Ahorro y Crédito de Ponce, in the original principal amount of $5,000.00, with 14% annual interests, due on presentation, constituted by deed #8, executed in Ponce, Puerto Rico, on April 10, 1985, before Notary Public Manuel B. Caballer, recorded at page 289 of volume 128 of Peñuelas, property number 2,031, 9th, inscription.

## VERIFICATION

I, JACQUELINE LAZU LABOY, of legal age, married, executive and resident of Humacao, Puerto Rico, in my capacity as Director of LRTF for the Farm Service Agency, San Juan, Puerto Rico, under the penalty of perjury, as permitted by Section 1746 of Title 28, United States Code, declare and certify:

1) My name and personal circumstances are stated above;

2) I subscribed this complaint as the legal and authorized representative of the plaintiff;

3) Plaintiff has a legitimate cause of action against the defendants above named which warrants the granting of relief requested in said complaint;

4) Defendants are a necessary and legitimate party to this action in view of the fact that they originated or assumed the mortgage obligation subject of this foreclosure, or bought the property subject to said mortgage;

5) From the information available to me and based upon the documents in the Farm Service Agency, it appears that defendants have not been declared incompetent by a court of justice with authority to make such a declaration;

6) I have carefully read the allegations contained in this complaint and they are true and correct to the best of my knowledge and to the documents contained in the files of the Farm Service Agency;

7) I have carefully examined the Exhibits included to this complaint which are true and correct copies of the originals. The mortgage deeds have been duly recorded in the Property Registry.

I make the foregoing declaration under penalty of perjury, as permitted under Section 1746 of Title 28, United States Code.

In San Juan, Puerto Rico, this 4 day of January, 2021.

JACQUELINE LAZU LABOY

PRAYER

WHEREFORE, the plaintiff demands judgment as follows:

a)   That defendant's party pays unto the plaintiff the amounts claimed on this complaint;

b)   Or in default thereof that all legal right, title and interest which the defendants may have in the property described in this complaint and any building or improvement thereon be sold at public auction and that the monies due to the United States as alleged in the preceding paragraphs be paid out of the proceeds of said sale;

c)   That the defendants and all persons claiming or who may claim by, from or under them be absolutely barred and foreclosed from all rights and equity of redemption in and to said property;

d)   That if the proceeds of such sale be insufficient to cover the amounts specified under paragraph 16 of this prayer, said defendant be adjudged to pay to the United States the total amount of money remaining unsatisfied to said paragraph (a) of this prayer, and execution be issued forthwith against said defendants for the payment of said deficiencies against any of the properties of said defendants;

e)   That if the proceeds of said sale exceed the sum of money to be paid to the United States as aforesaid, any such excess be deposited with the Clerk of this Court subject to further orders from the Court;

f)   That once the property is auctioned and sold, the Clerk of this Court issue a writ addressed to the Registry of the Property ordering the cancellation of the foreclosed mortgage and of any other junior liens recorded therein;

g)   For such further relief as in accordance with law and

equity may be proper.

     In Guaynabo, Puerto Rico, on   January 4, 2021


/s/ Juan Carlos Fortuño Fas
JUAN CARLOS FORTUÑO FAS
USDCPR 211913

FORTUÑO & FORTUÑO FAS, C.S.P.
P.O. BOX 3908
GUAYNABO, PR 00970
TEL.  787-751-5290
FAX. 787-751-6155
Email: dcfilings@fortuno-law.com

**Form FmHA 1940-17 (S)**
**(Rev. 11-1-78)**

UNITED STATES DEPARTMENT OF AGRICULTURE
FARMERS HOME ADMINISTRATION
PROMISSORY NOTE

TYPE OF LOAN
Type: FINANCIAL EMERGENCY

In accordance with:
     Consolidated Farm & Rural Development Act
X   Emergency Agricultural Credit Adjustment Act of 1978

Name: MYRIAM LOTTI DE JESUS
State: PUERTO RICO
Office: JUANA DIAZ
Case Number: 63-33-582806895
Date: MAY 9, 1979
Fund Code: 44
Loan Number: 04

ACTION REQUIRING NOTE:

| | |
|---|---|
| X  Initial Loan | New Payment Schedule |
|     Subsequent Loan | Reamortization |
|     Consolidation and Subsequent Loan | Sale on Credit |
|     Consolidation | Deferred Payments |

FOR VALUE RECEIVED, the undersigned Borrower(s) and any other co-borrower, jointly and severally promise to pay to the order of the United States of America, acting through the farmers Home Administration, United States Department of Agriculture (herein called the "Government"), or its representative, at its offices in JUANA DIAZ, PUERTO RICO, or at another location designated in writing by the Government, the principal sum of SIXTEEN THOUSAND ONE HUNDRED AND SEVENTY DOLLARS ($16,170.00), plus interest on the unpaid principal of EIGHT AND A HALF PERCENT (8 _ %) PER ANNUM. If this note is for a Limited Resources Loan (indicated in the box above, under the heading "Type of Loan"), the Government may CHANGE THE INTEREST RATE, in accordance with the Farmers Home Administration regulations, not more frequently than a calendar trimester basis, and shall notify Borrower at [Borrower's] most current address by mail, with thirty (30) days' notice. The new interest rate shall not exceed the highest interest rate established by the Farmers Home Administration regulations for the type of loan indicated above.

Principal and interests shall be paid in 41 installments, as indicated below, unless modified by a different interest rate, on or before the following dates:

1

$ 893.00.........on January 1, 1980
$ 1,430.00.......on January 1, 1981

and $1,430.00 subsequently on the first day of January of each year until the principal and interests are completely paid, except for the final payment of the debt evidenced herein, which, if not sooner paid, shall be due and payable in 40 years from the date of this note, with the exception that prepayments may be made as provided for below. The consideration hereof shall support any agreement modifying the schedule of payments.

If the total amount of the loan is not forwarded by the due date, the loan will be forwarded to Borrower, pursuant to request by Borrower and approval by the Government. Approval by the Government shall be granted only when the loan is requested for purposes authorized by the Government. Interests will accrue on the amount of each loan starting on the date these become effective as shown in the Payment Log at the end of this note. Borrower authorizes the Government to note the amount(s) and date(s) of any prepayment(s) in the Payment Log.

For any note that is reamortized, consolidated or restructured, the accumulated interests as of the date of this instrument will be added to the principal and the new principal will accrue interests at the rate evidenced herein.

Every payment made on any indebtedness evidenced by this note shall be applied first to interests computed to the effective date of the payment and then to the principal. Prepayments of scheduled installments, or any portion thereof, may be made at any time at the option of Borrower. Refunds and extra payments, as defined in the regulations (7 C.F.R. 1951.8) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, be applied to the installments last to become due under this note and shall not affect Borrower's obligation to pay the remaining installments as scheduled herein. Should the Government assign this note at any time, and insure the payment thereof, Borrower shall continue to make payments to the Government as collection agent for the holder.

If this note is held by an insured lender, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly, or, except for final payment, may be retained and remitted by the Government to the holder on an annual installment due date basis. The effective date of any prepayment made by Borrower, except for payments retained and remitted by Government to holder on an annual installment due date basis, shall be the date of the Treasury check with which the Government remits payment to the holder. The effective date of any prepayment retained and remitted by the Government to the holder on an annual installment due date basis, shall be the date of the prepayment made by Borrower, and the Government shall pay interests to which the holder is entitled accruing between the effective date of any such prepayment and the date of the Treasury check to the holder.

Any amount forwarded or invested by the Government to obtain payment of this note, or to maintain and protect the guarantee of the loan, or otherwise invested under the terms of any guarantee covenant or other instrument executed in relation to the loan evidenced herein, shall, at the option of the Government, become a part of the loan and shall accrue interests at the same interest rate of the principal of the loan evidenced herein, and shall become immediately due and payable by Borrower to the Government, without the need of requirements.

Property constructed, improved, purchased or refinanced in whole or in part with the loan evidenced herein shall not be leased, assigned, sold, transferred or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, Borrower shall personally operate said property as a farm if this loan is for a farm owner (FO).

If "Consolidation and Subsequent Loan", "Consolidation", "Reamortization" or "New Payment Schedule" is indicated in the box above under the heading "Action Requiring Note", this note is issued to consolidate, reamortize, or evidence a restructuring but not as satisfaction of principal and interests of the following note(s) or subrogation agreement(s) (new terms):

AMOUNT OF NOTE:
INTEREST RATE:
DATE:
ORIGINAL BORROWER:
FINAL PAYMENT DUE:

The securing documents made in relation to the loans evidenced by these described notes or other stated obligations are not affected by the execution of this consolidation, reamortization or new payment schedule. These securing instruments shall continue in effect, and the guarantee offered for the loans evidenced by the described note shall continue as guarantee for the loan evidenced by this note and by any other stated obligation.

REFINANCING AGREEMENT: If at any time, the Government finds that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock.

DEFAULT: Failure to pay when due any debt evidenced hereby or perform any covenant or agreement hereunder shall constitute default under any other instrument evidencing a debt of Borrower owing to or insured by the Government or securing or otherwise relating to such a debt; and default under any such other instrument shall constitute default hereunder. UPON ANY SUCH DEFAULT, the Government, at its option, may declare all or any part of any such indebtedness immediately due and payable.

3

This note is given as evidence of a loan to Borrower made or insured by the Government, pursuant to the Consolidated Farm and Rural Development act or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan indicated in the box 'TYPE OF LOAN" above. This note is subject to the present regulations of Farmers Home Administration and to its future regulations not inconsistent with the stipulations expressed herein.

Presentation, protest, and notice are hereby expressly waived.

[Signature]
MYRIAM LOTTI DE JESUS (BORROWER) (SEAL)
Box 284,
Peñuelas, Puerto Rico 00724

PAYMENT LOG

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|--------|------|--------|------|--------|------|
| $ | | $ | | $ | |

TOTAL:

# CERTIFICATE

I hereby certify that the attached Promissory Note is a true and accurate translation to the best of my knowledge, ability and belief. I am experienced, competent and certified to translate from Spanish into English.

DATED this 29th day of August 2003.

[Signature]

Nicole Harris

Notary Public
State of Washington
Rosa Walker
Commission Expires 02-01-06

WITNESS my hand and official seal hereto affixed this

4

29th day of August 2003.

_____
Signature

Notary Public
State of Washington
Rosa Walker
Commission Expires 02-01-06

Print Name: Rosa Walker
Notary Public in and for the State of Washington
My appointment expires: 02/01/06

Forma FmHA 1940-17 (2
(Rev. 11-1-78)

| | CLASE DE PRESTAMO |
|---|---|
| | Tipo: **EMERGENCIA ECONOMICA** |

**DEPARTAMENTO DE AGRICULTURA DE ESTADOS UNIDOS**
**ADMINISTRACION DE HOGARES DE AGRICULTORES**

**PAGARE**

De acuerdo a:

☐ Consolidated Farm & Rural Development Act
☒ Emergency Agricultural Credit Adjustment Act of 1978

| Nombre | | ACCION QUE REQUIERE PAGARE: |
|---|---|---|
| MYRIAM LOTTI DE JESUS | | |

| Estado | Oficina |
|---|---|
| PUERTO RICO | JUANA DIAZ |

| Caso Núm. | Fecha |
|---|---|
| 63-33-582806895 | 9 DE MAYO DE 1979 |

☒ Préstamo Inicial    ☐ Nuevo Plan de Pago
☐ Préstamo Subsiguiente   ☐ Reamortización
☐ Consolidación y préstamo  ☐ Venta a Crédito
 subsiguiente      ☐ Pagos Diferidos
☐ Consolidación

POR VALOR RECIBIDO, el Prestatario(s) subscribiente y cualquier otro co-deudor mancomunada y solidariamente pagaremos a la orden de Estados Unidos de América, actuando por conducto de la Administración de Hogares de Agricultores del Departamento de Agricultura de los Estados Unidos (denominado en adelante el "Gobierno") o su

cesionario en su oficina en ___JUANA DIAZ, PUERTO RICO___

o en otro sitio designado por el Gobierno por escrito, la suma principal de ___DIEZ Y SEIS MIL CIENTO___

___SETENTA-------------------___ dólares ($ ___16,170.00___ ) más intereses sobre el principal adeudado al

___OCHO Y MEDIO-------------------------------___ POR CIENTO ( 8 1/2 %) anual. Si este pagaré

es para un préstamo de Recursos Limitados (indicado en el encasillado superior "Clase de Préstamo"), el Gobierno puede **CAMBIAR EL PORCIENTO DE INTERES**, de acuerdo con los reglamentos de la Administración de Hogares de Agricultores, no más frecuente que trimestralmente, notificando por correo al Prestatario con treinta (30) días de anticipación a su última dirección. El nuevo tipo de interés no deberá exceder el porciento de interés más alto establecido en los reglamentos de la Administración de Hogares de Agricultores para el tipo de préstamo arriba indicado.

Principal e intereses serán pagados en ___41___ plazos, según indicado abajo, excepto si es modificado por un tipo de interés diferente, en o antes de las siguientes fechas:

| | | |
|---|---|---|
| $ ___893.00___ | $ | |
| $ ___1,430.00___ en enero 1, 1980 | $ | en enero 1, 19 ; |
| $ ___ en enero 1, 1981 | $ | en enero 1, 19 ; |
| $ ___ en enero 1, 19 ; | $ | en enero 1, 19 ; |
| $ ___ en enero 1, 19 ; | $ | en enero 1, 19 ; |
| y $ ___1,430.00___ en enero 1, 19 ; | $ | en enero 1, 19 ; |

, subsiguientemente en enero 1 de cada año hasta que el principal e intereses sean completamente pagados excepto que el plazo final de la deuda aquí evidenciada, de no ser pagada anteriormente, vencerá y será pagadero en ___40___ años de la fecha de este pagaré y excepto que se podrán hacer pagos adelantados según se provee más abajo. La consideración aquí envuelta respaldará cualquier convenio modificado del plan de pagos.

Si la cantidad total del préstamo no es adelantada a la fecha del cierre, el préstamo será adelantado al Prestatario según solicitado por el Prestatario y aprobado por el Gobierno. La aprobación del Gobierno será dada siempre y cuando el adelanto es solicitado para un propósito autorizado por el Gobierno. Se acumularán intereses por la cantidad de cada adelanto desde su fecha actual como se demuestra en el Registro de Adelantos en el final de este pagaré. El Prestatario autoriza al Gobierno a anotar la(s) cantidad(es) y fecha(s) de tal(es) adelanto(s) en el Registro de Adelantos.

En cada pagaré reamortizado o consolidado, o con un nuevo plan de pago, los intereses acumulados a la fecha de este instrumento deberán ser sumados al principal y ese nuevo principal acumulará intereses a razón del porciento evidenciado por este instrumento.

Todo pago hecho en cualquier deuda representada por este pagaré será primero aplicado a intereses computados a la fecha efectiva del pago y después al principal.

Jay-Ce Agricultura            Posicion 2            Forma FmHA 1940-17 (2)
(Rev. 11-1-78)

Pagos adelantados de los plazos estipulados o cualquier parte de los mismos, podrán hacerse en cualquier tiempo a opción del Prestatario. Reembolsos y pagos extras, según se definen en los reglamentos (7 C.F.R. 1861.2) de la Administración de Hogares de Agricultores, de acuerdo con la fuente de los fondos envueltos, después de abonarse los intereses, se aplicarán a los últimos plazos a vencer bajo este pagaré y no afectarán la obligación del Prestatario de pagar los restantes plazos según se especifican en el mismo. Si el Gobierno en cualquier momento cediera este pagaré y asegura el pago del mismo, el prestatario continuará haciendo los pagos al Gobierno como agente cobrador del tenedor.

Mientras este pagaré esté en poder de un prestamista asegurado, los pagos adelantados hechos por el Prestatario podrán, a opción del Gobierno, ser remitidos por el Gobierno prontamente al tenedor o, a excepción del pago final, podrán ser retenidos por el Gobierno y remitidos al tenedor a base de plazo anual vencido. La fecha efectiva de todo pago hecho por el prestatario, excepto pagos retenidos y remitidos por el Gobierno al tenedor a base de plazo anual vencido será la fecha del cheque del Tesoro de los Estados Unidos mediante el cual el Gobierno remite el pago al tenedor. La fecha efectiva de cualquier pago adelantado retenido y remitido por el Gobierno al tenedor a base de plazo anual vencido, será la fecha del pago adelantado por el Prestatario y el Gobierno pagará los intereses a los cuales el tenedor tiene derecho que se devenguen entre la fecha efectiva de cualquiera de dichos pagos adelantados y la fecha del cheque del Tesoro remitido al tenedor.

Cualquier cantidad adelantada o invertida por el Gobierno para el cobro de este pagaré o para preservar o proteger la garantía del préstamo o de otra manera invertido bajo los términos de cualquier convenio de garantía u otro instrumento otorgado en relación con el préstamo aquí evidenciado, a opción del Gobierno pasará a ser parte del préstamo y devengará intereses al mismo tipo de interés que el principal de la deuda aquí evidenciada y vencerá y será pagadera inmediatamente por el Prestatario al Gobierno sin necesidad de requerimiento.

La propiedad construida, mejorada, comprada o refinanciada en total o en parte con el préstamo aquí evidenciado no será arrendada, cedida, vendida, transferida o gravada voluntariamente o de otra forma, sin el previo consentimiento por escrito del Gobierno. A menos que el Gobierno consienta lo contrario por escrito, el Prestatario operará personalmente dicha propiedad como una finca si este préstamo es a dueño de finca (FO).

Si una "Consolidación y un Préstamo Subsiguiente", "Consolidación", "Reamortización" o un "Nuevo Plan de Pago" es indicado en el encasillado superior de la primera página "Acción que Requiere Pagaré", este pagaré es otorgado para consolidar, reamortizar o evidenciar un nuevo plan de pago pero no en satisfacción del principal e intereses del siguiente pagaré(s) o convenio(s) de subrogación (nuevos términos):

| VALOR DEL PAGARE | INTERESES | FECHA | PRESTATARIO ORIGINAL | ULTIMO PLAZO A VENCER |
|---|---|---|---|---|
| $ | % | ,19 | | ,19 |
| $ | % | ,19 | | ,19 |
| $ | % | ,19 | | ,19 |
| $ | % | ,19 | | ,19 |
| $ | % | ,19 | | ,19 |
| $ | % | ,19 | | ,19 |
| $ | % | ,19 | | ,19 |

Los documentos de garantía tomados en relación con los préstamos evidenciados por estos pagarés descritos u otras obligaciones relacionadas no son afectadas por el otorgamiento de esta consolidación, reamortización o nuevo plan de pago. Estos instrumentos de garantía continuarán en efecto y la garantía ofrecida para los préstamos evidenciados por los pagarés descritos permanecerán como garantía para el préstamo evidenciado por este pagaré y por cualquier otra obligación relacionada.

CONVENIO DE REFINANCIAMIENTO: Si en cualquier tiempo el Gobierno determinare que el Prestatario puede obtener un préstamo de una cooperativa responsable u otra fuente de crédito privada a un tipo de interés y términos razonables para préstamos por tiempo y condiciones similares, el Prestatario, a requerimiento del Gobierno, solicitará y aceptará el préstamo en cantidad suficiente para satisfacer este pagaré en su totalidad y pagar las acciones necesarias si el prestamista es una cooperativa.

INCUMPLIMIENTO: La falta de pago a su vencimiento de cualquier deuda aquí evidenciada o el incumplimiento de cualquier condición o acuerdo bajo este documento constituirá incumplimiento bajo cualquier otro instrumento evidenciando una deuda del Prestatario asegurada o garantizada por el Gobierno o en cualquier otra forma relacionada con dicha deuda; el incumplimiento bajo cualquier otro instrumento constituirá incumplimiento bajo los términos de este documento. COMETIDO CUALQUIER INCUMPLIMIENTO, el Gobierno, a su opción, podrá declarar toda o parte de dicha deuda vencida y pagadera inmediatamente.

Este Pagaré se otorga como evidencia de un préstamo al Prestatario concedido o asegurado por el Gobierno conformidad con la Consolidated Farm and Rural Development Act o el Emergency Agricultural Credit Adjustment of 1978 y para el tipo de préstamo según indicado en el encasillado **"CLASE DE PRESTAMO"** más arriba. Este Pag está sujeto a los reglamentos presentes de la Administración de Hogares de Agricultores y a sus futuros reglamento inconsistentes con las estipulaciones aquí consignadas.

Presentación, protesto y aviso son por la presente expresamente renunciados.

_____
MYRIAM LOTTI DE JESUS            (Prestata

_____
                                (Prestata

## CERTIFICATION

I, Juan M. Ortiz Serbiá, of legal age, married and resident of Guayama, Puerto Rico. In my official capacity as State Executive Director of the Farm Service Agency, U.S. Department of Agriculture, hereby declare under penalty of perjury that this is a true and exact copy of the original document which I have under my custody.

San Juan, Puerto Rico.

_____
Juan M. Ortiz Serbiá
State Executive Director

Box 284

Peñuelas, Puerto Rico  00724

_____

| REGISTRO DE ADELANTOS | | | | | |
|---|---|---|---|---|---|
| CANTIDAD | FECHA | CANTIDAD | FECHA | CANTIDAD | FECHA |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| | | | TOTAL | $ | |

Jay-Ce-Agricultura                    *Posición 2*                    Forma FmHA 1940-17 (S)
                                                                      (Rev. 11-1-78)

Exhibit 2

**Form FmHa 427-1 PR**
**10/77**

NUMBER SEVENTY-NINE

VOLUNTARY MORTGAGE

In Ponce, Puerto Rico, on May nine (9), Nineteen Hundred and Seventy-nine (1979).

IN MY PRESENCE

RENE F. SOTOMAYOR SANTOS, Attorney and Public Notary of this island, resident of Ponce, Puerto Rico, with offices in Ponce, Puerto Rico.

THERE NOW APPEAR:

The persons named in paragraph TWELFTH of this mortgage, hereinafter called "mortgagor," and whose personal circumstances appear in said paragraph.

I attest to personal acquaintance of the parties, as well as to their age, marital status, profession, and residence.

They attest to full exercise of their civil rights and the free administration of their property, and they have, in my judgment, the necessary legal capacity to execute this document.

THEY DECLARE:

FIRST:  That the mortgagor is the owner of the farm or farms described in paragraph ELEVENTH, with all corresponding rights and interests, referred to hereinafter as "the property."

SECOND:  That the property mortgaged herein is subject to the liens specified in paragraph ELEVENTH.

THIRD:  That the mortgagor is indebted to the United States of America, acting through the Farmers Home Administration, referred to hereinafter as "mortgagee," in connection with a loan or loans represented by one or more promissory notes or subrogation agreements, referred to hereinafter as "the note," whether one or more.  It is required by the Government that additional monthly payments of one twelfth of the taxes, insurance premiums, and other charges on the mortgaged property.

FOURTH:  It is understood that:

(One) The note represents a loan or loans to mortgagor in the principal amount specified

2

herein, granted with the purpose and intention that the mortgagee may at any time surrender the note and insure the payment thereof pursuant to the Act of 1961, consolidating the Farmers Home Administration, or Title Five of The Housing Act of 1949, as amended.

(Two) When payment of the note is guaranteed by the mortgagee, it may be transferred from time to time, and each holder of said note will in turn be considered the insured lender.

(Three) When payment of the note is insured by the mortgagee, the mortgagee will execute and deliver to the insured lender, along with the note, an insurance endorsement fully guaranteeing payment of the principal and interest on said note.

(Four) Whenever payment of the note is insured by the mortgagee, the mortgagee, by agreement with the insured lender, shall determine on the insurance endorsement the portion of the note's interest to be designated as "annual charges."

(Five) As a condition of the insurance of the note's payment, the holder will surrender all rights and remedies against the mortgagor and any others in connection with said loan, as well as any benefit of this mortgage, and will accept in its place the insurance benefits, and in the event that the mortgagor violates any agreement or stipulation contained herein, or in the note, or in any other supplementary agreement, the mortgagee may require the note to be endorsed to himself.

(Six) It is the purpose and intent of this mortgage that, among other things, whenever the note is held by the mortgagee, or in the event the mortgagee should transfer this mortgage without insuring the note, this mortgage shall guarantee payment of the note; but when the note is held by an insured lender, this mortgage shall not guarantee payment of the note, nor shall it form any part of the debt represented thereby, but the note and said debt shall constitute an indemnity mortgage to insure the mortgagee against any loss under its insurance endorsement by reason of any default by the mortgagor.

FIFTH: That, in consideration of said loan and (a) whenever the note is held by the mortgagee, or in the event that the mortgagee should transfer this mortgage without insuring the note's payment, in guarantee of the amount of the note as specified in subparagraph (one) of paragraph NINTH, with interest at the rate stipulated, and to insure prompt payment of said note, and any renewals or extensions thereof, and any agreements contained therein, (b) whenever the note is held by an insured lender guaranteeing the amounts specified in subparagraph (two) of paragraph NINTH, in order to guarantee compliance with the mortgagor's agreement to indemnify and hold harmless the mortgagee against losses under its insurance endorsement by reason of any default by the mortgagor, and (c) in any event and at all times whatsoever, to guarantee the additional amounts specified in subparagraph (three) of paragraph NINTH, and to insure mortgagor's compliance with each and every agreement and stipulation herein, or in any supplementary agreement, mortgagor hereby grants to mortgagee a voluntary mortgage on the property described in paragraph ELEVENTH, together with all rights, interests,

easements, inheritances, and appurtenances thereto belonging; all income, credits, profits, revenues; all improvements or personal property thereto attaching, at present or in the future, or which are reasonably necessary for the use thereof; all water, water rights, or shares in said rights; pertaining to the farms, and all payments at any time owing to mortgagor by virtue of the sale, lease, transfer, conveyance, or total or partial expropriation of, or injury to, any part thereof, or to their interests, it being understood that this mortgage will continue in full force and effect until all amounts specified in paragraph NINTH, with interest before and after maturity, until they have been paid in full. In case of foreclosure, the property will be responsible for the payment of the principal, interest thereon before and after maturity, losses sustained by mortgagee as insurer of the note, taxes, insurance premiums, or any other disbursements or advances by mortgagee, to be paid by mortgagor with interest until all costs and expenses, including fees of mortgagee's attorneys, are paid to mortgagee, along with all extensions and renewals of said obligations, with interest, and all other charges and additional amounts specified in paragraph NINTH.

SIXTH: Mortgagor explicitly agrees to the following:

(One) To pay promptly to the mortgagee any debt herein guaranteed and to indemnify and hold mortgagee harmless against any loss under its insurance for payment of the note by reason of any default by mortgagor. Whenever the note is held by an insured lender, mortgagor shall continue making payments on the note to mortgagee, as collection agent for the holder.

(Two) To pay the mortgagee an initial fee for inspection and appraisal and any delinquency charges, now or hereafter required by Farmers Home Administration regulations.

(Three) Whenever the note is held by an insured lender, any amount due and unpaid under the terms of the note, less the amount of the annual charge, may be paid by mortgagee to the holder of the note under the terms of the note and of the insurance endorsement referred to in the above paragraph FOURTH, the responsibility of the mortgagor.

Any amount due and unpaid under the terms of the note, whether it is held by mortgagee or by an insured lender, may be credited to the note by mortgagee, and shall thus constitute an advance by mortgagee, the responsibility of mortgagor.

Any advance by mortgagee as described in this subparagraph shall bear interest at the annual rate of eight and a half percent (8 _ %), from the date on which payment was due until the date on which mortgagor pays the debt.

(Four) Whether or not the note is insured by mortgagee, any and all amount advanced by mortgagee for insurance premiums, repairs, liens, or other claims for the protection of the mortgaged property, or for taxes or assessments or other similar charges due to mortgagor's failure to pay said charges, shall bear interest at the rate stated in the

preceding subparagraph, from the date of the advance until mortgagor pays said advance.

(Five) All advances made by mortgagee as described in this mortgage, with interest, shall be immediately due and payable by mortgagor to mortgagee without need for advance notification in the place designated in the note, and shall be guaranteed by this mortgage. No advance by mortgagee shall relieve mortgagor from breach of his covenant to pay. Such advances, with interest, shall be repaid from the first payments received from mortgagor. In the absence of such advances, all payments verified by mortgagor may be applied to the note or to any other mortgagee debt guaranteed herein, in the order determined by mortgagee.

(Six) To use the amount of the loan indicated in the note solely for purposes authorized by mortgagee.

(Seven) To pay when due all taxes, special assessments, liens, and charges encumbering the property or the rights or interests of mortgagor under the terms of this mortgage.

(Eight) To obtain and maintain insurance against fire and other hazards as required by mortgagee on all existing buildings and property improvements, as well as on all future improvements. The insurance against fire and other hazards will be in the form, in the amount, and on the terms and conditions approved by mortgagee.

(Nine) To keep the property in good condition and to promptly make all necessary repairs in order to preserve the property; he will refrain from any activity, or from allowing any activity, which would result in the deterioration of the property; he will not remove nor demolish any building or improvement on the property; nor will he cut or remove wood from the farm, nor remove nor permit to be removed gravel, sand, oil, gas, coal, or other minerals, without mortgagee's consent, and will promptly carry out the repairs on the property that mortgagee may request from time to time. Mortgagor shall comply with soil conservation practices and farm and home management plans that mortgagee may prescribe from time to time.

(Ten) If this mortgage is granted for a loan to a farm owner as identified in Farmers Home Administration regulations, the mortgagor shall personally manage the property, on his own or through family labor, as a farm and for no other purpose, and shall not lease the farm, nor any part of it, unless mortgagee gives written consent to another method of operation or lease.

(Eleven) To submit information regarding income and expenses and any other information related to the management of the property, in the form and manner the mortgagee may require, and to comply with all laws, ordinances, and regulations affecting the property or its use.

(Twelve) Mortgagee, along with his agents and attorneys, shall at all times have the right to inspect and examine the property for the purpose of ascertaining whether security is deteriorating or being compromised, and if such inspection or examination shall disclose,

5

in mortgagee's judgment, that security is in fact deteriorating or being compromised, this shall constitute a breach by mortgagor of this mortgage agreement.

(Thirteen) If any other person interferes with or contests mortgagor's rights of possession of the property, mortgagor shall immediately notify mortgagee of such action, and mortgagee may decide to institute the measures necessary to defend his interests, and any costs or expenditures incurred by mortgagee due to said measures will be added to mortgagor's debt, and will be guaranteed by this mortgage as additional credits under the clause regarding advances, expenditures and other payments.

(Fourteen) If at any time while this mortgage remains in effect, mortgagor shall abandon the property or voluntarily return it to mortgagee, mortgagee is hereby authorized and empowered to take possession of the property, to lease and administer it, and to collect the rents, benefits, and income from them, and to apply them first to the costs of collection and administration, and secondly to the payment of the debt described by the note or any other debt to mortgagee herein guaranteed, in the order and manner to be determined by mortgagee.

(Fifteen) At any time that mortgagee determines that mortgagor may be able to obtain a loan from a production credit association, from a Federal Bank or other responsible source, whether cooperative or private, with a rate of interest and terms that are reasonable for loans of similar duration and purposes, then mortgagor, at mortgagee's request, will apply for and accept such a loan in a sufficient amount to pay the note and any other debt guaranteed herein, and to pay for the necessary shares in the cooperative agency with respect to such a loan.

(Sixteen) In the event of default in the discharge of any obligation guaranteed by this mortgage, or if mortgagor, or any other person included herein as a mortgagor, defaults in the payment of any amount, or violates or fails to comply with any clause, condition, stipulation, covenant, or agreement contained herein, or in any supplementary agreement, or if mortgagor dies or is declared incompetent, bankrupt, or insolvent, or makes a transfer for the benefit of creditors, or if the property or any part thereof or interest therein is sold, leased, transferred, conveyed, or encumbered, voluntarily or otherwise, without mortgagee's written consent, then mortgagee is irrevocably authorized and empowered, at his discretion and without notice:  (One) to declare all debt left unpaid under the terms of this note, or any other debt to mortgagee guaranteed herein, immediately due and payable, and to proceed to foreclosure in accordance with the law and the provisions thereof; (Two) to incur and pay reasonable expenses for the repair and maintenance of the property and any expenses or obligations that mortgagor failed to pay as agreed in this mortgage, including taxes, assessments, insurance premiums, and any other expenses or costs for the protection and preservation of the property and of this mortgage, or for violation of any provision of this mortgage; and (Three) to request the protection of the law.

(Seventeen) Mortgagor shall pay, or shall reimburse mortgagee for all necessary expenses for the fulfillment of the covenants and agreements of this mortgage, and of the note and

of any supplementary agreement, including the costs of surveying, title search, court costs, deed recording, and attorneys' fees.

(Eighteen) Without in any way affecting mortgagee's right to require and enforce at any subsequent date the covenants, agreements, or obligations herein set forth, or other similar agreements, and without affecting the liability of any person for payment of the note or any other debt herein guaranteed, and without affecting the lien created upon the property or the priority of said lien, mortgagee is hereby authorized and empowered at any time:  (one) to waive the performance of any agreement or obligation contained herein, or in the note, or in any supplementary agreement; (two) to negotiate with mortgagor or to grant to mortgagor any indulgence or forbearance or extension of the time for payment of the note (with the consent of the note's holder when it is held by an insured lender), or for payment of any debt to the mortgagee herein guaranteed; or (three) to execute and deliver partial releases of any part of the mortgaged property described herein, or to grant deferment or postponement of this mortgage to any other lien on the property.

(Nineteen) All rights, title, and interest in or on this mortgage, including but not limited to the power to grant consent, partial releases, subordination, and revocation, shall be vested solely and exclusively in the mortgagee, and no insured lender shall have any right, title, or interest in or on this mortgage and any benefits herein contained.

(Twenty) Default on this mortgage shall constitute default on any other mortgage, loan, or real estate mortgage held or insured by mortgagee, and executed or assumed by mortgagor; and default on any such instrument shall constitute default on this mortgage.

(Twenty-One) All notices to be given under the terms of this mortgage shall be sent by certified mail unless otherwise required by law, and shall be addressed until some other address is designated in a notice provided to that effect, in the case of mortgagee, to Farmers Home Administration, Unites States Department of Agriculture, San Juan, Puerto Rico; and in the case of mortgagor, to him at his residence address as stated below.

(Twenty-Two) Mortgagor hereby grants to mortgagee the amount of any judgment obtained through forced expropriation for public use of the property or any part thereof, as well as the amount of any judgment for damages to the property.  Mortgagee will apply the amount so received to pay costs incurred in collection, and the balance will apply to payment of the note, and any indebtedness to mortgagee guaranteed by this mortgage, and if any amount then remains, will pay such amount to mortgagor.

SEVENTH:  That for the purpose of the first auction to be held in case of foreclosure of this mortgage, in accordance with mortgage law, as amended, mortgagor does hereby appraise the mortgaged property in the amount of SIXTEEN THOUSAND ONE HUNDRED AND SEVENTY DOLLARS ($16,170.00).

EIGHTH:  Mortgagor hereby waives the requirement of law and agrees to be considered

in default with no need for prior notification by mortgagee. This mortgage is subject to the regulations of the Farmers Home Administration now in effect, and to future regulations, not inconsistent with the provisions of this mortgage, as well as to the laws of the United States Congress authorizing and insuring the aforementioned loan.

NINTH: The amounts guaranteed by this mortgage are as follows:
One. Whenever the note referred to in paragraph THIRD of this mortgage is held by mortgagee, or in the event mortgagee should transfer this mortgage without insuring the note: SIXTEEN THOUSAND ONE HUNDRED AND SEVENTY DOLLARS ($16,170.00), the note's principal, together with interest as stipulated at the annual rate of eight and a half percent (8 _ %).

Two. Whenever the note is held by an insured lender:

(A) SIXTEEN     THOUSAND ONE HUNDRED AND SEVENTY DOLLARS ($16,170.00) to compensate mortgagee for advances to the insured lender because of mortgagor's failure to pay the installments as specified in the note, with interest as indicated in paragraph SIXTH, subparagraph three

(B) TWENTY-FOUR THOUSAND FIVE HUNDRED DOLLARS ($24,500.00), to further compensate mortgagee against any losses suffered under its insurance for payment of the note;

Three. In any event and at any time:

(A) SIX THOUSAND FOUR HUNDRED AND SIXTY-EIGHT DOLLARS ($6,468.00) for interest upon default;
(B) THREE THOUSAND TWO HUNDRED AND THIRTY-FOUR DOLLARS ($3,234.00) for taxes, insurance, and other advances for the preservation and protection of this mortgage, with interest at the rate stipulated in paragraph SIXTH, subparagraph three;
(C) ONE THOUSAND SIX HUNDRED AND SEVENTEEN DOLLARS ($1,617.00) for court costs, expenses, and attorneys' fees in case of foreclosure;
(D) ONE THOUSAND SIX HUNDRED AND SEVENTEEN DOLLARS ($1,617.00) for court costs and expenses incurred by mortgagee in proceedings to defend his interests against any other person interfering with or contesting the mortgagor's right of possession of the property, as provided in paragraph SIXTH, subparagraph thirteen.

TENTH: That the note referred to in paragraph THIRD of this mortgage is described as follows:
"Promissory note granted in case number sixty-three dash thirty-three dash five hundred and eighty- two, eight hundred and six, eight hundred and ninety-five (63-33-583803895) dated May nine (9), nineteen hundred and seventy-nine (1979) for the total of SIXTEEN THOUSAND ONE HUNDRED AND SEVENTY DOLLARS ($16,170.00) of principal, plus interest on the unpaid balance at the annual rate of eight and a half percent (8 _ %), until the principal is paid entirely according to the terms, installments, conditions, and

stipulations contained in the note, and as agreed between the borrower and the Government; except that the final installment of the debt represented herein, if not previously paid, will be due and payable FORTY (40) years from the date of this note.

Said note is granted as evidence of a loan made by the Government to the borrower, pursuant to the law of the US Congress known as "Consolidated Farm and Rural Development Act of 1961," or pursuant to "Title V of the Housing Act of 1949," both as amended, and is subject to present Farmers Home Administration regulations, and to future regulations which are not inconsistent with these laws. To said note, I, the authorizing Notary, BEAR WITNESS.

ELEVENTH: That the property which is the subject of this deed and for which this voluntary mortgage is executed, is described as follows:

ONE: RURAL: Plot of land located in the Barrio Rucio of Peñuelas, Puerto Rico, consisting of two tape-measure lengths and sixty-three and a half hundredths of another, equivalent to one hectare, three ares, and seventeen centiares, with boundaries to the East with a neighbouring road, to the West and South, with Mr. Julio Toro, formerly, and presently with Mr. Dionisio Lotti Luchessi, and to the North, with Julio y Manuel Toro, presently with Mr. Dionisio Lotti Luchessi.

Inscribed on page One (1) of book one hundred and one (101) of Peñuelas, Puerto Rico, farm number Two Thousand Twenty-Five (2,025).

TWO: RURAL: Plot of land located in the Barrio Rucio of Peñuelas, Puerto Rico, with an approximate area of twelve and a half hundredths of one tape-measure length, equivalent to four ares, ninety-one centiares and thirty miliares, with boundaries to the North and East with lands belonging to Mr. Dionisio Lotti Lichessi and to the South and West with the remainder of the farm from which it was segregated, property of Mr. Efraín Santos y Santos and presently belonging to Mr. Dionisio Lotti Luchessi.

Inscribed on page six (6) of book one hundred and one (101) of Peñuelas, Puerto Rico, farm number Two Thousand Twenty-Seven (2,027).

THREE: RURAL: Farm located in the Barrio Rucio of the municipality of Peñuelas, consisting, according to its titles, of thirty-six tape-measure lengths and twenty-five one-hundredths, but when measured by the surveyor Mr. Alberto Rodríguez Anfriani turned out to have a total surface area of thirty-two tape-measure lengths and eight hundred and ninety-eight one-thousandths, equivalent to twelve hectares, ninety ares, sixty-six centiares and seven miliares, with current points and boundaries that appear in the plan made by the aforementioned engineer, and with boundaries as follows: to the North, with lands belonging to the estate of A.J. Bartolomei, lands belonging to Eligio de Jesús and to the estate of Alfredo Toro, the latter being divided by a neighboring road; to the South, it borders on lands belonging to Eliseo Santos, to Efraín Santos; to the East, it borders on lands belonging to Efraín Santos, the estate of A.J. Bartolomei and a stream, and to the West, it borders on lands belonging to Edelmiro Díaz Santos, Santiago Santos and the estate of Alfredo Toro, separated by a neighboring road at the fork.

This farm contains a wooden and zinc house, designed as a residence and another wooden and zinc house for gatherings.

Inscribed on page Thirty (30) of book Ninety-One (91) of Peñuelas, Puerto Rico, farm

number Two Thousand and Thirty-One (2,031).

Acquired through titles of Inheritance and Bargain and Sale, according to deeds number forty-seven (47) and nineteen (19), executed on August twenty-first (21st), nineteen hundred and seventy-four (1974), before the Notaries Antonio V. Santiago and Vicente Rodríguez.

The appearing party states they are free of burdens. Encumbered by mortgage in favor of Federal Land Bank of Baltimore, for the principal amount of thirty-five thousand dollars ($35,000.00), which will be cancelled as a result of this deed.

TWELFTH: That appearing as the party in this deed is Mrs. Myriam Lotti de Jesús, adult, single, teacher and resident of Peñuelas, Puerto Rico, whose postal address is: Box 284, Peñuelas, Puerto Rico, Zero Zero Seven Two Four (00724).

THIRTEENTH: The loan amount consigned herein, will be used for agricultural purposes and the construction and/or repair and or improvements of physical facilities of the described property.

FOURTEENTH: The borrower will personally occupy and use any structure that is constructed, improved, or purchased with the proceeds of the loan herein guaranteed, and shall not lease or use said structure for other purposes, unless the Government gives consent in writing. Violation of this clause, as well as violation of any other agreement or clause contained herein, will cause the debt to become due as if the whole term had elapsed, and the Government may declare the loan due and payable, and may proceed to foreclosure of the mortgage.

FIFTEENTH: This mortgage expressly extends to any constructions or buildings currently existing on the aforementioned farm, and to all improvements, constructions, or buildings to be constructed on said farm while the Government's mortgage loan is in effect, as verified by the present owners/debtors or by their trustees or executors. Any improvement, construction or building to be constructed on said properties during the aforementioned time must be constructed with the prior written consent of the mortgagor, in conformance with present regulations and those future regulations that might be established in accordance with federal and local laws, not inconsistent with current laws governing these types of loans.

SIXTEENTH: Mortgagor hereby waives jointly and severally for himself and on behalf of his heirs, trustees, successors, or representatives, in favor of mortgagee (Farmers Home Administration), any present or future Homestead right that he may have on the property described in paragraph eleven, and in the buildings thereon, or which may be constructed in the future; this waiver being permitted in favor of the Farmers Home Administration by Law Number Thirteen (13) of May 28, nineteen hundred sixty-nine (1969) (31. L.P.R.A. 1851).

SEVENTEENTH: The mortgagor and the mortgagee are agreed that any stove, oven, or heater purchased either totally or partially financed with the funds of the loan herein guaranteed, are considered and interpreted as part of the property tax of this deed.

EIGHTEENTH: The appearing party in this deed also states that, as this is a loan for agricultural purposes, she has agreed not to distribute the responsibility amongst the encumbered farms and therefore they will all be responsible, jointly and severally, for the debt, principal, interests, fees and other credits secured by this deed; all of which is in conformance with Article One Hundred and Nineteen (119) of the Mortgage Law, as amended under Law Number Seventy-Nine (79) of June twenty-five (25), nineteen hundred and sixty-nine (1969).

NINETEENTH: This instrument guarantees the recovery of any interest credit or subsidy that may be granted to the lender by the Government in accordance with the terms of Title Forty-two (42) of US Code Section One Thousand Four Hundred Ninety A (42-U.S.C.-1490-A).

## READING AND ACCEPTANCE

The appearing parties have read this deed and accept it in the manner written upon finding it in conformance with their instructions and stipulations.

## WARNINGS AND EXECUTION

I, the Notary, in conformance with the dispositions of the law, have given the pertinent legal warnings related to this execution. The appearing party formalizes, accepts and ratifies it, signing and initialing each page.

I BEAR WITNESS to everything contained in this deed, and also to the placement of the corresponding Sales Tax and Notary Tax seals, and thus I sign, seal, and endorse this deed.

SIGNED: MRS. MYRIAM LOTTI DE JESUS. Her initials appear on every page.

Signed, stamped, sealed, and endorsed:
RENE F. SOTOMAYOR SANTOS

The corresponding Sales Tax seals and the Bar Association seals are cancelled, and the initials of the executors are written, all in accordance with the law.

This is a true and exact copy of the original that appears with the indicated number in the protocol of public instruments of this

11

Notary Office in my charge, and to which I
refer.
I certify that, in order to deliver [this] to
Myriam Lotti de Jesús, an interested party, I
issue this first certified copy, which I sign,
stamp, seal and endorse in Ponce, Puerto
Rico, on the same date of its execution.

[Signature]
[Seals]

# **CERTIFICATE**

I hereby certify that the attached Voluntary Mortgage is a true and accurate
translation to the best of my knowledge, ability and belief. I am experienced, competent
and certified to translate from Spanish into English.

DATED this 29th day of August 2003.

*[Signature]*

Nicole Harris

WITNESS my hand and official seal hereto affixed this
29th day of August 2003.

*[Signature]*
Signature

Notary Public
State of Washington
Rosa Walker
Commission Expires 02-01-06

Print Name: Rosa Walker
Notary Public in and for the State of Washington
My appointment expires: 02/01/06

12

Forma FmHA 427-1 PR
10/77

-----------------------------NUMERO SETENTINUEVE----------------

------------------------HIPOTECA VOLUNTARIA----------------

En Ponce, Puerto Rico a los Nueve (9) días del mes de mayo---
del Mil Novecientos Setenta y Nueve (1979).-----------------

--------------------------- ANTE MI -------------------

---RENE F. SOTOMAYOR SANTOS,--------------------------------

Abogado y Notario Público de esta Isla con residencia y vecindad en
Ponce, Puerto Rico-------------y oficina en Ponce, Puerto Rico.-

--------------------------- COMPARECEN ----------------

Las personas nombradas en el párrafo DUODECIMO de esta hipoteca
denominados de aquí en adelante el "deudor hipotecario" y cuyas
circunstancias personales aparecen de dicho párrafo.----------------

Doy fe del conocimiento personal de los comparecientes, así como por sus
dichos de su edad, estado civil, profesión y vecindad. -------------

Aseguran hallarse en el pleno goce de sus derechos civiles, la libre
administración de sus bienes y teniendo a mi juicio la capacidad legal
necesaria para este otorgamiento, -----------------------------

-------------------------- EXPONEN------------

PRIMERO: El deudor hipotecario es dueño de la finca o fincas descritas en
el párrafo UNDECIMO así como de todos los derechos e intereses en las
mismas, denominada de aquí en adelante "los bienes". --------------

SEGUNDO: Que los bienes aquí hipotecados están afectos a los
gravámenes que se especifican en el párrafo UNDECIMO.--------------

TERCERO: Que el deudor hipotecario viene obligado para con Estados
Unidos de América, actuando por conducto de la Administración de Hogares
de Agricultores, denominado de aquí en adelante el "acreedor hipotecario",
en relación con un préstamo o préstamos evidenciado por uno o más pagarés
o convenio de subrogación, denominado en adelante el "pagaré", sean uno o
más. Se requiere por el Gobierno que se hagan pagos adicionales mensuales
de una doceava parte de las contribuciones, avaluos (impuestos), primas de

FORMA FmHA 427-1 PR

1

Forma FmHA-427-1 PR
10/77

seguros y otros cargos que se hayan estimados sobre la propiedad
hipotecaria.————————————————————————

CUARTO: Se sobreentiende que:————————————

(Uno) El pagaré evidencia un préstamo o préstamos al deudor hipotecario
por la suma de principal especificada en el mismo, concedido, con el
propósito y la intención de que el acreedor hipotecario puede ceder el pagaré
en cualquier tiempo y asegurar su pago de conformidad con el Acta de mil
novecientos sesenta y uno consolidando la Administración de Hogares de
Agricultores o el Título Quinto de la Ley de Hogares de mil novecientos
cuarenta y nueve, según ha sido enmendada.————————————

(Dos) Cuando el pago del pagaré es garantizado por el acreedor hipotecario,
puede ser cedido de tiempo en tiempo y cada tenedor de dicho pagaré a su
vez será el prestamista asegurado.——————————————

(Tres) Cuando el pago del pagaré es asegurado por el acreedor hipotecario, el
acreedor hipotecario otorgará y entregará al prestamista asegurado
conjuntamente con el pagaré un endoso de seguro garantizando totalmente el
pago de principal e intereses de dicho pagaré.——————————

(Cuatro) En todo tiempo que el pago del pagaré esté asegurado por el
acreedor hipotecario, el acreedor hipotecario, por convenio con el
prestamista asegurado, determinarán en el endoso de seguro la porción del
pago de intereses del pagaré que será designada como "cargo anual".————

(Cinco) Una condición del aseguramiento de pago del pagaré será de que el
tenedor cederá todos sus derechos y remedios contra el deudor hipotecario y
cualquiera otro en relación con dicho préstamo así como también a los
beneficios de esta hipoteca y aceptará en su lugar los beneficios del seguro, y
en caso de violación de cualquier convenio o estipulación aquí contenida o
en el pagaré o en cualquier convenio suplementario por parte del deudor
hipotecario, a requerimiento del acreedor hipotecario endosará el pagaré al
acreedor hipotecario.————————————————————

(Seis)   Entre otras cosas, es el propósito e intención de esta hipoteca, que
en todo tiempo cuando el pagaré esté en poder del acreedor hipotecario, o en
el caso en que el acreedor hipotecario ceda esta hipoteca sin asegurar el
pagaré, esta hipoteca garantizará el pago del pagaré pero cuando el pagaré





FORMA FmHA427-1 PR

Forma FmHA-427-1 PR
10/77

esté en poder de un prestamista asegurado, esta hipoteca no garantizará el pago del pagaré o formará parte de la deuda evidenciada por el mismo, pero en cuanto al pagaré y a dicha deuda, constituirá una hipoteca de indemnización para garantizar al acreedor hipotecario contra cualquier pérdida bajo el endoso de seguro por causa de cualquier incumplimiento por parte del deudor hipotecario. ————————————————————————

QUINTO: Que en consideración al préstamo y (a) en todo tiempo que el pagaré sea conservado por el acreedor hipotecario o en el caso de que el acreedor hipotecario ceda la presente hipoteca sin el seguro de pago del pagaré y en garantía del importe del pagaré según se especifica en el subpárrafo (Uno) del párrafo NOVENO con sus intereses al tipo estipulado y para asegurar el pronto pago de dicho pagaré, su renovación o extensión y cualquier convenio contenido en el mismo, (b) en todo tiempo que el pagaré sea poseído por el prestamista asegurado en garantía de las sumas especificadas en el subpárrafo (Dos) del párrafo NOVENO aquí consignado, para garantizar el cumplimiento del convenio del deudor hipotecario de indemnizar y conservar libre al acreedor hipotecario contra pérdidas bajo el endoso de seguro por razón de incumplimiento del deudor hipotecario y (c) en cualquier caso y en todo tiempo en garantía de las sumas adicionales consignadas en el subpárrafo (Tres) del párrafo NOVENO de este instrumento y para asegurar el cumplimiento de todos y cada uno de los convenios y estipulaciones del deudor hipotecario aquí contenidos o en cualquier otro convenio suplementario, el deudor hipotecario por la presente constituye hipoteca voluntaria a favor del acreedor hipotecario sobre los bienes descritos en la párrafo UNDECIMO más adelante, así como sobre los derechos, intereses, servidumbres, derechos hereditarios, adhesiones pertenecientes a los mismos, toda renta, créditos, beneficios de los mismos, y todo producto e ingreso de los mismos, toda mejora o propiedad personal en el presente o que en el futuro se adhiera o que sean razonablemente necesarias para el uso de los mismos, sobre las aguas, los derechos de agua o acciones en los mismos, pertenecientes a las fincas o a todo pago que en cualquier tiempo se adeude al deudor hipotecario por virtud de la venta, arrendamiento, transferencia, enajenación o expropiación total o parcial de o por daños a cualquier parte de las mismas o a los intereses sobre ellas, siendo entendido que este gravámen quedará en toda su fuerza y vigor hasta que las cantidades especificadas en el párrafo NOVENO con sus intereses antes y después del vencimiento hasta que los mismos hayan sido pagados en su totalidad. En caso de ejecución, los bienes responderán del pago del principal, los intereses antes y después de vencimiento, hasta su total

-2-

Forma FmHA-427-1 PR
10/77

solvento, pérdida sufrida por el acreedor hipotecario como asegurador del pagaré, contribuciones, prima de seguro o cualquier otro desembolso o adelanto por el acreedor hipotecario por cuenta del deudor hipotecario con sus intereses hasta que sean pagados al acreedor hipotecario, costas, gastos y honorarios de abogado del acreedor hipotecario, toda extensión o renovación de dichas obligaciones con intereses sobre todas y todo otro cargo o suma adicional especificada en el párrafo NOVENO de este documento, ————————

SEXTO: El deudor hipotecario expresamente conviene lo siguiente:————————

(Uno) Pagar al acreedor hipotecario prontamente a su vencimiento cualquier deuda aquí garantizada e indemnizar y conservar libre de pérdida al acreedor hipotecario bajo el seguro del pago del pagaré por incumplimiento del deudor hipotecario. En todo tiempo cuando el pagaré sea poseído por el prestamista asegurado, el deudor hipotecario continuará haciendo los pagos contra dicho pagaré al acreedor hipotecario como agente cobrador del tenedor del mismo. ————————————



(Dos) A pagar al acreedor hipotecario una cuota inicial por inspección y tasación y cualquier cargo por delincuencia requerido en el presente o en el futuro por los reglamentos de la Administración de Hogares de Agricultores.

(Tres) En todo tiempo cuando el pagaré sea poseído por un prestamista asegurado, cualquier suma adeudada y no pagada bajo los términos del pagaré, menos la cantidad o carga anual, podrá ser pagada por el acreedor hipotecario al tenedor del pagaré bajo los términos provistos en el pagaré y en el endoso de seguro referido en el párrafo CUARTO anterior por cuenta del deudor hipotecario. ————————————————

Cualquier suma vencida y no pagada bajo los términos del pagaré, sea éste poseído por el acreedor hipotecario o por el prestamista asegurado, podrá ser acreditada por el acreedor hipotecario al pagaré y en su consecuencia constituirá un adelanto por el acreedor hipotecario por cuenta del deudor hipotecario.————————————————

Cualquier adelanto por el acreedor hipotecario tal como se describe en este subpárrafo devengará intereses a razón del Ocho y Medio——————— por ciento ( 8 1/2  %) anual a partir de la fecha en que venció el pago hasta la fecha en que el deudor hipotecario lo satisfaga.——————————————

(Cuatro) Fuere o no el pagaré asegurado por el acreedor hipotecario,

—4—

Forma FmHA-427-1 PR
10/77

cualquier o todo adelanto hecho por el acreedor hipotecario para prima de seguro, reparaciones, gravámenes u otra reclamación en protección de los bienes hipotecados o para contribuciones o impuestos u otro gasto similar por razón de haber el deudor hipotecario dejado de pagar por los mismos, devengará intereses a razón del tipo estipulado en el subpárrafo anterior desde la fecha de dichos adelantos hasta que los mismos sean satisfechos por el deudor hipotecario. ————————————————

(Cinco) Todo adelanto hecho por el acreedor hipotecario descrito en esta hipoteca con sus intereses vencerá inmediatamente y será pagadero por el deudor hipotecario al acreedor hipotecario sin necesidad de requerimiento alguno en el sitio designado en el pagaré y será garantizado por la presente hipoteca. Ningún adelanto hecho por el acreedor hipotecario no relevará al deudor hipotecario de su violación del convenio de pagar. Dichos adelantos, con sus intereses, se reembolsarán de los primeros pagos recibidos del deudor hipotecario. Si no hubieren adelantos, todo pago verificado por el deudor hipotecario podrá ser aplicado al pagaré o a cualquier otra deuda del deudor hipotecario aquí garantizada en el orden que el acreedor hipotecario determinare. ————————————————

(Seis) Usar el importe del préstamo evidenciado por el pagaré únicamente para los propósitos autorizados por el acreedor hipotecario. ——————

(Siete) A pagar a su vencimiento las contribuciones, impuestos especiales, gravámenes y cargas que graven los bienes o los derechos o intereses del deudor hipotecario bajo los términos de esta hipoteca. ——————————

(Ocho) Obtener y mantener seguro contra incendio y otros riesgos según requiera el acreedor hipotecario sobre los edificios y las mejoras existentes en los bienes o cualquier otra mejora introducida en el futuro. El seguro contra fuego y otros riesgos serán en la forma y por las cantidades, términos y condiciones que aprobare el acreedor hipotecario. ————————

(Nueve) Conservar los bienes en buenas condiciones y prontamente verificar las reparaciones necesarias para la conservación de los bienes; no cometerá ni permitirá que se cometa ningún deterioro de los bienes; ni removerá ni demolerá ningún edificio o mejora en los bienes, ni cortará ni removerá madera de la finca, ni removerá ni permitirá que se remueva grava, arena, aceite, gas, carbón u otros minerales sin el consentimiento del acreedor hipotecario y prontamente llevará a efecto las reparaciones en los bienes que



FORMA FmHA-427-1 PR

Forma FmHA-427-1 PR
10/77

el acreedor hipotecario requiera de tiempo en tiempo. El deudor hipotecario cumplirá con aquellas prácticas de conservación de suelo y los planes de la finca y del hogar que el acreedor hipotecario de tiempo en tiempo pueda prescribir. ——————————————————————————

(Diez) Si esta hipoteca se otorga para un préstamo a dueño de finca según se identifica en los reglamentos de la Administración de Hogares de Agricultores, el deudor hipotecario personalmente operará los bienes por sí y por medio de su familia como una finca y para ningún otro propósito y no arrendará la finca ni parte de ella a menos que el acreedor hipotecario consienta por escrito en otro método de operación o al arrendamiento. ——

(Once) Someterá en la forma y manera que el acreedor hipotecario requiera la información de sus ingresos y gastos y cualquier otra información relacionada con la operación de los bienes y cumplirá con todas las leyes, ordenanzas y reglamentos que afecten los bienes o su uso. ———————

(Doce) El acreedor hipotecario, sus agentes y abogados, tendrán en todo tiempo el derecho de inspeccionar y examinar los bienes con el fin de determinar si la garantía otorgada está siendo mermada o deteriorada, y si dicho examen o inspección determinare, a juicio del acreedor hipotecario, que la garantía otorgada está siendo mermada o deteriorada, tal condición se considerará como una violación por parte del deudor hipotecario de los convenios de esta hipoteca. ———————————————————

(Trece) Si cualquier otra persona detentare con o impugnare el derecho de posesión del deudor hipotecario a los bienes, el deudor hipotecario inmediatamente notificará al acreedor hipotecario de dicha acción y el acreedor hipotecario, a su opción, podrá instituir aquellos procedimientos que fueren necesarios en defensa de sus intereses y los gastos y desembolsos incurrido por el acreedor hipotecario en dichos procedimientos, serán cargados a la deuda del deudor hipotecario y se considerarán garantizados por esta hipoteca dentro del crédito adicional de la cláusula hipotecaria para adelantos, gastos y otros pagos. ———————————————

(Catorce) Si el deudor hipotecario en cualquier tiempo mientras estuviere vigente esta hipoteca, abandonare los bienes o voluntariamente se los entregase al acreedor hipotecario, el acreedor hipotecario es por la presente autorizado y con poderes para tomar posesión de los bienes, arrendarlos y administrar los bienes y cobrar sus rentas, beneficios e ingresos de los mismos

—6—

Forma FmHA-427-1 PR
10/77

y aplicarlos en primer término a los gastos de cobro y administración y en segundo término al pago de la deuda evidenciada por el pagaré o cualquier otra deuda del deudor hipotecario y aquí garantizada, en el orden y manera que el acreedor hipotecario determinare. ————————————————

(Quince) En cualquier tiempo que el acreedor hipotecario determinare que el deudor hipotecario puede obtener un préstamo de una asociación de crédito para producción, de un Banco Federal u otra fuente responsable, cooperativa o privada, a un tipo de interés y términos razonables para préstamos por tiempo y propósitos similares, el deudor hipotecario, a requerimiento del acreedor hipotecario, solicitará y aceptará dicho préstamo en cantidad suficiente para satisfacer el pagaré y cualquier otra deuda aquí garantizada y pagar por las acciones necesarias en la agencia cooperativa en relación con dicho préstamo. ————————————————

(Dieciseis) El incumplimiento de cualesquiera de las obligaciones garantizadas por esta hipoteca, o si el deudor hipotecario o cualquier otra persona incluída como deudor hipotecario faltare en el pago de cualquier cantidad o violare o no cumpliere con cualquier cláusula, condición, estipulación o convenio o acuerdo aquí contenido o en cualquiera convenio suplementario, o falleciere o se declarare o fuere declarado incompetente, en quiebra, insolvente o hiciere una cesión en beneficio de sus acreedores, o los bienes o parte de ellos o cualquier interés en los mismos fueren cedidos, vendidos, arrendados, transferidos o gravados voluntariamente o de otro modo, sin el consentimiento por escrito del acreedor hipotecario, el acreedor hipotecario es irrevocablemente autorizado y con poderes, a su opción y sin notificación: (Uno) a declarar toda deuda no pagada bajo los términos del pagaré o cualquier otra deuda al acreedor hipotecario aquí garantizada, inmediatamente vencida y pagadera y proceder a su ejecución de acuerdo con la ley y los términos de la misma; (Dos) incurrir y pagar los gastos razonables para la reparación o mantenimiento de los bienes y cualquier gasto u obligación que el deudor hipotecario no pagó según se conviniere en esta hipoteca, incluyendo las contribuciones, impuestos, prima de seguro y cualquier otro pago o gasto para la protección y conservación de los bienes y de esta hipoteca o incumplimiento de cualquier precepto de esta hipoteca y (Tres) de solicitar la protección de la ley. ————————————————

(Diecisiete) El deudor hipotecario pagará o reembolsará al acreedor hipotecario todos los gastos necesarios para el fiel cumplimiento de los convenios y acuerdos de esta hipoteca, los del pagaré y en cualquier otro



Forma FmHA-427-1 PR
10/77

convenio suplementario, incluyendo los gastos de mensura, evidencia de título, costas, inscripción y honorarios de abogado. ------------------- -

(Dieciocho) Sin afectar en forma alguna los derechos del acreedor hipotecario para requerir y hacer cumplir en cualquier fecha posterior los convenios, acuerdos u obligaciones aquí contenidas o similares u otros convenios y sin afectar la responsabilidad de cualquier persona para el pago del pagaré o cualquier otra deuda aquí garantizada y sin afectar el gravámen impuesto sobre los bienes o la prioridad del gravámen, el acreedor hipotecario es por la presente autorizado y con poder en cualquier tiempo (Uno) renunciar el cumplimiento de cualquier convenio u obligación aquí contenida o en el pagaré o en cualquier convenio suplementario; (Dos) negociar con el deudor hipotecario o conceder al deudor hipotecario cualquier indulgencia o tolerancia o extensión de tiempo para el pago del pagaré (con el consentimiento del tenedor de dicho pagaré cuando esté en manos de un prestamista asegurado) o para el pago de cualquier deuda a favor del acreedor hipotecario, y aquí garantizada; o (Tres) otorgar y entregar cancelaciones parciales de cualquier parte de los bienes de la hipoteca aquí constituída u otorgar diferimiento o postergación de esta hipoteca a favor de cualquier otro gravámen constituído sobre dichos bienes.

(Diecinueve) Todos los derechos, título e interés en y sobre la presente hipoteca, incluyendo pero no limitando el poder de otorgar consentimientos, cancelaciones parciales, subordinación, cancelación total, radica sola y exclusivamente en el acreedor hipotecario y ningún prestamista asegurado tendrá derecho, título o interés alguno en o sobre el gravámen y los beneficios aquí contenidos. ----------------------------------

(Veinte) El incumplimiento de esta hipoteca constituirá incumplimiento de cualesquiera otra hipoteca, préstamo refaccionario, o hipoteca de bienes muebles poseída o asegurada por el acreedor hipotecario y otorgada o asumida por el deudor hipotecario; y el incumplimiento de cualesquiera de dichos instrumentos de garantía constituirá incumplimiento de esta hipoteca.

(Veintiuno) Todo aviso que haya de darse bajo los términos de esta hipoteca será remitido por correo certificado a menos que se disponga lo contrario por ley, y será dirigido hasta tanto otra dirección sea designada en un aviso dado al efecto, en el caso del acreedor hipotecario a Administración de Hogares de Agricultores, Departamento de Agricultura de Estados Unidos, San Juan, Puerto Rico, y en el caso del deudor hipotecario, a él a la dirección postal de



FORMA FmHA 427-1 PR

Forma FmHA-427-1 PR
10/77

su residencia según se especifica más adelante. ------------------------------

(Veintidos) El deudor hipotecario por la presente cede al acreedor hipotecario el importe de cualquier sentencia obtenido por expropiación forzosa para uso público de los bienes o parte de ellos así como también el importe de la sentencia por daños causados a los bienes. El acreedor hipotecario aplicará el importe que reciba al pago de los gastos en que incurriere en su cobro y el balance al pago del pagaré y cualquier deuda al acreedor hipotecario garantizada por esta hipoteca, y si hubiere algún sobrante, se reembolsará al deudor hipotecario. ------------------------

SEPTIMO: Para que sirva de tipo a la primera subasta que deberá celebrarse en caso de ejecución de esta hipoteca, de conformidad con la ley hipotecaria, según enmendada, el deudor hipotecario por la presente tasa los bienes hipotecados en la suma de  DIEZ Y SEIS MIL CIENTO SETENTA DOLARES- ($16,170.00).-----------------------------------------------

---------------------------------------------------------------------

OCTAVO: El deudor hipotecario por la presente renuncia al trámite de requerimiento y se considerará en mora sin necesidad de notificación alguna por parte del acreedor hipotecario. Esta hipoteca está sujeta a los reglamentos de la Administración de Hogares de Agricultores ahora en vigor y a futuros reglamentos, no inconsistentes con los términos de esta hipoteca, así como también sujeta a las leyes del Congreso de Estados Unidos de América que autorizan la asignación y aseguramiento del préstamo antes mencionado. -----------------------------------------------------

NOVENO: Las cantidades garantizadas por esta hipoteca son las siguientes:

Una. En todo tiempo cuando el pagaré relacionado en el párrafo TERCERO de esta hipoteca sea poseído por el acreedor hipotecario o en caso que el acreedor hipotecario cediere esta hipoteca sin asegurar el pagaré:  DIEZ Y--- SEIS MIL CIENTO SETENTA-------------- DOLARES ($ 16,170.00 ) el principal de dicho pagaré, con sus intereses según estipulados a razón del Ocho y Medio-------------por ciento (8 1/2 %) anual;------------

Dos. En todo tiempo cuando el pagaré es poseído por un prestamista asegurado: ----------------------------------------------------------
(A)  DIEZ Y SEIS MIL CIENTO SETENTA-------------------------
----------------------------------------- DOLARES ($16,170.00  )



FORMA FmHA-427-1 PR

-9-

Forma FmHA-427-1 PR
10/77

para indemnizar al acreedor hipotecario por adelantos al prestamista asegurado por motivo del incumplimiento del deudor hipotecario de pagar los plazos según se especifica en el pagaré, con intereses según se especifica en el párrafo SEXTO, Tercero; ——————————————————————

(B)   VEINTICUATRO MIL QUINIENTOS—————————————————————
———————————————————————— DOLARES ($ 24,500.00 )

para indemnizar al acreedor hipotecario además contra cualquier pérdida que pueda sufrir bajo su seguro de pago del pagaré; ——————————————————

Tres. En cualquier caso y en todo tiempo: ——————————————————

(A)   SEIS MIL CUATROCIENTOS SESENTA Y OCHO—————————————
——————————————————————— DOLARES ($ 6,468.00  )

para intereses después de mora; —————————————————————

(B)   TRES MIL DOSCIENTOS TREINTA Y CUATRO————————————
——————————————————————— DOLARES ($ 3,234.00  )

para contribuciones, seguro y otros adelantos para la conservación y protección de esta hipoteca, con intereses al tipo estipulado en el párrafo SEXTO, Tercero; ——————————————————————————

(C)   MIL SEISCIENTOS DIEZ Y SIETE——————————————————
——————————————————————— DOLARES ($ 1,617.00  )

para costas, gastos y honorarios de abogado en caso de ejecución; —————

(D)   MIL SEISCIENTOS DIEZ Y SIETE——————————————————
——————————————————————— DOLARES ($ 1,617.00  )

para costas y gastos que incurriere el acreedor hipotecario en procedimientos para defender sus intereses contra cualquier persona que intervenga o impugne el derecho de posesión del deudor hipotecario a los bienes según se consigna en el párrafo SEXTO, Trece. ——————————————————

DECIMO: Que el (los) pagaré(s) a que se hace referencia en el párrafo TERCERO de esta hipoteca es (son) descrito(s) como sigue: ——————————

"Pagaré otorgado en el caso número Sesenta y Tres raya Trein-
titres raya Quinientos Ochentidos, Ochocientos Seis Ochocien-
tos Noventicinco (63-33-582806895) fechado el día Nueve (9)—
de mayo del Mil Novecientos Setenta y Nueve (1979).——————

——————————————————————————————————————
——————————————————————————————————————
——————————————————————————————————————
——————————————————————————————————————

Agricultura





—10—

Forma FmHA 427-I PR
10/77

por la suma de  DIEZ Y SEIS MIL CIENTO SETENTA ($16,170.00)---------

----------dólares de principal más intereses sobre el balance del principal

adeudado a razón del   Ocho y Medio------------------------------------

----------( 8 1/2% ) por ciento anual, hasta tanto su principal sea

totalmente satisfecho según los términos, plazos, condiciones y estipulaciones

contenidas en dicho pagaré y según acordados y convenidos entre el

Prestatario y el Gobierno; excepto el pago final del total de la deuda aquí

representada, de no haber sido satisfecho con anterioridad, vencerá y será

pagadero a los  Cuarenta (40)--------años de la fecha de este pagaré.

— Dicho pagaré ha sido otorgado como evidencia de un préstamo concedido

por el Gobierno al Prestatario de conformidad con la Ley del Congreso

de los Estados Unidos de América denominada "Consolidated Farm and

Rural Development Act of 1961" o de conformidad con el "Title V of

the Housing Act of 1949", según han sido enmendadas y está sujeto a los

presentes reglamentos de la Administración de Hogares de Agricultores

y a los futuros reglamentos no inconsistentes con dicha Ley . De cuya

descripción, yo, el Notario Autorizante, DOY FE. ----------------------

UNDECIMO:  Que la propiedad objeto de la presente escritura y sobre la que
se constituye Hipoteca Voluntaria, se describe como sigue: ----------------

---UNO:  RUSTICA:  Parcela de terreno radicada en el Barrio-----
Rucio de Peñuelas, Puerto Rico, compuesta de Dos cuerdas Sesenta
y Tres y Medio centimos de otra, equivalentes a una hectárea,---
Tres áreas, y Diecisiete centiáreas, en colindancias por el Este
con un camino vecinal, por el Oeste y Sur, antes, con don Julio-
Toro y hoy con don Dionisio Lotti Luchessi y por el Norte, con-
don Julio y Manuel Toro, hoy don Dionisio Lotti Luchessi.--------

---Inscrita al folio Uno (1) del tomo Ciento Uno (101) de Peñue-
las, Puerto Rico, finca número Dos Mil Veinticinco (2,025).-----

---DOS:  RUSTICA:  Parcela de terreno radicada en el Barrio Rucio
de Peñuelas, con cabida de Doce y Medio centimo de cuerda, más-
menos, equivalentes a Cuatro áreas, Noventiuna centiáreas, y-
Treinta miliáreas, en lindes por el Norte y Este, con terrenos
de don Dionisio Lotti Luchessi y por el Sur y Oeste con el res-
to de la finca de donde se segregó, propiedad de don Efraín-----
Santos y Santos y hoy de don Dionisio Lotti Luchessi.-----------

---Inscrita al folio Seis (6) del tomo Ciento Uno (101) de Pe-
ñuelas, Puerto Rico, finca número Dos Mil Veintisiete (2,027).--

---TRES:  RUSTICA:  Finca radicada en el Barrio Rucio del térmi-
no municipal de Peñuelas, compuesta según sus títulos de Treinta y-
Seis cuerdas Veinticinco céntimos, pero que mensurada por el a-
grimensor don Alberto Rodríguez Anfriani resultó contener una---
cabida total de Treinta y Dos cuerdas Ochocientos Noventiocho---
milésimas, iguales de Doce hectáreas, Noventa áreas, Sesentiseis
centiáreas y Siete miliáreas, bajo los puntos y colindancias----
actuales que figuran en el plano levantado por dicho ingeniero---
siendo sus colindancias las siguientes:  por el Norte linda con-
terrenos de Sucesión A.J. Bartolomei, los de Eligio de Jesús y-
de Sucesión de Alfredo Toro, dividido éstos últimos-------------



folio - 02
finca #-2025
Tomo: (132B)Ligo
inscripción 1ra

folio: 6
finca #=2027
Tomo: 101 Peñuelas
inscripción: 2da

11

*folio - 30*
*Tomo: 91 Peñuelas*
*fica # 2031*
*inscripción : 7ma*

por un camino vecinal; por el Sur, colinda con tierras de Eliseo Santos, de Efraín Santos; por el Este colinda con tierras de Efraín Santos, Sucesión A.J. Bartolomei, y una quebrada y por el Oeste, colinda con tierras de Edelmiro Díaz Santos, Santiago Santos y Sucesión de Alfredo Toro, separadas por el camino vecinal en la cuchilla.-----------------------

---Contiene esta finca una casa de madera y zinc para vivienda y otra casa de madera y zinc, pequeña para agregado.-------

---Inscrita al folio Treinta (30) del tomo Noventiuno (91) de Peñuelas, Puerto Rico, finca número Dos Mil Treinta y Uno----
(2,031).-------------------------------------------------------

---Adquiridas a título de Herencia y Compraventa según escrituras número Cuarentisiete (47) y Diecinueve (19), otorgadas el Veintiuno (21) de agosto de Mil Novecientos Setenta y Dos (1972) y el Veintidos (22) de febrero de Mil Novecientos-----
Setenta y Cuatro (1974), ante los Notarios Antonio V..Santiago y Vicente Rodríguez.------------------------------------------

---Manifiesta la compareciente que se encuentran libres de cargas. Gravadas con Hipoteca a favor del Federal Land Bank of Baltimore por la suma principal de Treinticinco Mil Dólares ($35,000.00), la cual será cancelada con el producto de esta hipoteca.-----------------------------------------------

-------------------------------------------------------------
-------------------------------------------------------------
-------------------------------------------------------------
-------------------------------------------------------------
-------------------------------------------------------------
-------------------------------------------------------------
-------------------------------------------------------------
-------------------------------------------------------------
-------------------------------------------------------------
-------------------------------------------------------------
-------------------------------------------------------------
-------------------------------------------------------------
-------------------------------------------------------------
-------------------------------------------------------------
-------------------------------------------------------------

RENE F. SOTOMAYOR SANTOS
Puerto Rico
ABOGADO - NOTARIO

---DUODECIMO:  Que comparecen en al presente escritura como---
Deudores Hipotecarios Doña Myriam Lotti de Jesús, mayor de edad
soltera, profesora y vecina de Peñuelas, Puerto Rico cuya di----
rección postal es:  Apartado Doscientos Ochenticuatro (284)---
Peñuelas, Puerto Rico Cero Cero Setecientos Veinticuatro-------
(00724).--------------------------------------------------------

-----------------------------------------------------------------

---DECIMO TERCERO:  El importe del préstamo aquí consignado se
usó o será usado para fines agrícolas y la construcción y/o---
reparación y/o mejoras de las instalaciones físicas en la fin-
cas(s) descrita(s).-------------------------------------------

---DECIMO CUARTO:  El prestatario ocupará personalmente y usará
cualquier estructura que haya sido construida, mejorada o com-
prada con el importe del préstamo aquí garantizado y no arren-
dará o usará para otros fines dicha estructura a menos que----
el Gobierno lo consienta por escrito.  La violación de esta---
cláusula como la violación de cualquiera otro convenio o cláu-
sula aquí contenida ocasionará el vencimiento de la obligación
como si todo el término hubiese transcurrido y en aptitud el--
Gobierno de declarar vencido o pagadero el préstamo y proceder
a la ejecución de la hipoteca.-------------------------------

---DECIMO QUINTO:  Esta hipoteca se extiende expresamente a---
toda construcción o edificación existente en la(s) finca(s)---
antes descrita(s) y a toda mejora, construcción o edificación-
que se construya en dicha finca(s) durante la vigencia del----
préstamo hipotecario constituido a favor del Gobierno, veri---
ficada por los actuales dueños deudores o por sus cesionarios-
o causahabientes.---------------------------------------------

---Toda mejora, construcción o edificación que se construya en
dichas fincas durante la vigencia antes mensionada deberá ser-
construida previa autorización por escrito del acreedor hipo--
tecario, conforme a los reglamentos presentes y a aquellos fu-
turos que se promulguen de acuerdo con las leyes federales y--
locales no inconsistentes o incompatibles con las leyes presen-
tes que gobiernan estos tipos de préstamos.--------------------

---DECIMO SEXTO: El deudor hipotecario por la presente renuncia mancomunada y solidariamente por sí y a nombre de sus herederos causahabientes, sucesores o representantes a favor del acreedor (Administración de Hogares de Agricultores), cualquier derecho de Hogar Seguro (Homestead) que en el presente o en el presente o en el futuro pudiera tener en la propiedad descrita en el párrafo undécimo y en los edificios allí enclavados o--que en el futuro fueran construidos; renuncia esta permitida-- a favor de la Administración de Hogares de Agricultores por la Ley Número Trece (13) del Veintiocho (28) de mayo de Mil Novecientos Sesenta y Nueve (1969) (31 L.P.R.A. 1851).------------

---DECIMO SEPTIMO: El acreedor y el deudor hipotecario convienen en que cualquier estufa, horno, calentador comprado o-- financiado total o parcialmente con fondos del préstamo aquí-- garantizado, se considerará e interpretará como parte de la--- propiedad gravada por esta Hipoteca.--------------------------

---DECIMO OCTAVO: Manifiesta además la compareciente en esta- escritura que por tratarse de un préstamo para fines agrícolas ha acordado en no distribuir la responsabilidad entre las fincas gravadas y por lo tanto todas responderán por separado solidariamente y mancomunadamente de la deuda, principal, intereses, costas y demás créditos garantizados por esta escritura; todo ello conforme al Artículo Ciento Diecinueve (119) de la-- Ley Hipotecaria, según el mismo ha sido enmendado por la ley-- Setentinueve (79) del Veinticinco (25) de junio del Mil Novecientos Sesenta y Nueve (1969).-----------------------------

---DECIMO NOVENO: Este instrumento garantiza así mismo, el--- rescate o recuperación de cualquier crédito por intereses o--- subsidio que pueda otorgarse a los prestatarios por el Gobierno de acuerdo a las disposiciones del Título Cuarenta y Dos (42)- del Código de los Estados Unidos, Sección Mil Cuatrocientos--- Noventa A (1,490 A).------------------------------------------

-------------LECTURA Y ACEPTACION-------------------

---Leyeron los otorgantes esta escritura y aceptan la misma en

la forma en que ha sido redactada por ser y hallarse conforme--
a lo por ellos ordenado y estipulado.----------------------------

--------------------ADVERTENCIAS Y OTORGAMIENTO----------------

---Yo, el Notario, en cumplimiento de lo dispuesto por la ley
les hice las advertencias legales pertinentes a este otorga---
miento. La parte compareciente formaliza, acepta y se ratifi-
ca en la misma firmándola e iniciándola en todos sus folios.--
---DOY FE de todo lo contenido en esta escritura así como de--
estar adheridos a la misma los correspondientes sellos de Ren-
tas Internas y el Arancel Notarial, en cuya virtud firmo,------
signo, sello y rubrico esta escritura.------------------------
---FIRMADO: DOÑA MYRIAM LOTTI DE JESUS. Aparecen sus inicia--
les en todos los folios.--------------------------------------

Firmado, signado, sellado y rubricado
RENE F. SOTOMAYOR SANTOS ..................
Hay cancelados los sellos de Rentas Internas correspon-
dientes y el Sello del Colegio de Abogados,
        y escritas las iniciales de los otorgantes, todo
de acuerdo con la ley..............................
Concuerda bien y fielmente con la escritura matriz que
bajo el número indicado obra en el protocolo de ins-
trumentos públicos de esta notaría a mi cargo, a que
me remito ...................................
Y en fe de ello y para entregar a Myriam Lotti
de Jesús _____, parte interesada,
expido la Primera _____copia que firmo,
sello, signo y rubrico en Ponce, Puerto Rico, el mismo
día de su otorgamiento.......................

RENE F. SOTOMAYOR SANTOS
Puerto Rico
ABOGADO - NOTARIO

PONCE
Puerto Rico

Inscrito este documento allí
donde indica al margen
de la descripción de cada
finca. La finca número 2031
esta afecta a dos hipotecas
a favor The Federal Land
Bank of Baltimore por la
suma de $35,000.00 y a favor
del Portador por la suma de
$13,500.00 y las fincas 2025 y
2027 están afectas a una hi-
poteca a favor The Federal
Land Bank of Baltimore por
la suma de $35,000.00. Ponce
a 22 de mayo de 1979.
Sin Derecho.

MAY 13 1980

# TITLE SEARCH

ESTUDIOS DE TITULO
SEGUROS DE TITULO

PO BOX 1467, TRUJILLO ALTO, P.R. 00977-1467
TELS. (787) 748.1130 / 748-8577 • FAX (787) 748-1143
estudios@eagletitlepr.com

Este documento NO es una póliza de Seguro de Título, por lo cual no debe utilizarse como tal. La responsabilidad de la entidad que preparó este Estudio de Título, está limitada a la cantidad pagada por la preparación de dicho Estudio de Título. Para completa protección deben requerir una póliza de Seguro de Título.

**CLIENT:  MIRIAM LOTTI DE JESUS**          **REF: 1521.247**
                                            **BY: TAIMARY ESCALONA**

**PROPERTY NUMBER:** 2,025, recorded at page 100 of volume 51 of Peñuelas, Registry of Ponce, Puerto Rico, section II.

**DESCRIPTION: (As it is recorded in the Spanish language)**

**RUSTICA:** Parcela de terreno radicada en el barrio Rucio de Peñuelas, Puerto Rico, compuesta de **dos cuerdas, sesenta y tres y medio, céntimos de otra, equivalentes a una hectárea, tres áreas y diecisiete centiáreas**, en colindancias por el **ESTE**, con un camino vecinal; por el **OESTE** y **SUR**, antes, con Julio Toro y hoy con Don Dionisio Lotti Luchessi; y por el **NORTE**, con don Julio y Mandel Toro, hoy don Dionisio Lotti Luchessi.

**TITLE:**

This property is registered in favor of MIRIAM LOTTI DE JESUS, single, who acquired it as follows:

One part by adjudication of inheritance, value of $223,000.00, pursuant to deed #11, executed in Ponce, Puerto Rico, on February 21, 1949, before Rafael Hernandez Matos Notary Public; ratified by deed #47, executed in Ponce, Puerto Rico on August 21, 1972 before Antonio Santiago Droz Notary Public, recorded at page 101 of volume 51 of Peñuelas, property number 2,025, 2nd, inscription.
**Presented on November 24, 1971**
**Recorded on May 18, 1973**

Other part by purchase of participations of this and other properties of Iris Celeste and Milagros Lotti De Jesús, for the total amount of $10,000.00, responding this property by $500.00, pursuant to deed #19, executed in San Juan, Puerto Rico on February 22, 1974 before Vicente Rodríguez Feliciano Notary Public, recorded at page 104 of volume 51 of Peñuelas, property number 2,025, 4th, inscription.
**Presented on June 18, 1974**
**Recorded on October 21, 1975**

**LIENS AND ENCUMBRANCES:**

I.   By reason of its origin this property is free of liens and encumbrances

II.  By reason of itself this property is encumbered by the following:

1.  **MORTGAGE:** Constituted by Miriam Lotti De Jesús, over this and other properties, in favor of United States of America, acting as Farmer Home Administration, in the original principal amount of $16,170.00, with 8 1/2% annual interests, due on 40 years, constituted by deed #79, executed in Ponce, Puerto Rico, on May 9, 1979, before Notary Public René F. Sotomayor Santos, recorded at page 2 of volume 101 of Peñuelas, property number 2,025, 7th, inscription. Conditions.
    **Presented on May 16, 1979**
    **Recorded on May 22, 1979**



Eagle Title & Other Services, Inc.

PAGE #2
PROPERTY #2,025

ESTUDIOS DE TITULO
SEGUROS DE TITULO

P.O. BOX 1467, TRUJILLO ALTO, P.R. 00977-1467
TELS. (787) 748.1130 / 748-8577 • FAX (787) 748-1143
estudios@eagletitlepr.com

Este documento NO es una póliza de Seguro de Título, por lo cual no debe utilizarse
como tal. La responsabilidad de la entidad que preparó este Estudio de Título, está
limitada a la cantidad pagada por la preparación de dicho Estudio de Título. Para
completa protección deben requerir una póliza de Seguro de Título.

Eagle Title & Other Services, Inc.

**REVIEWED:**

Federal Attachments, Commonwealth of Puerto Rico Tax Liens,
Judgments and Daily Log up to December 26th, 2019.

*NOTICE: The Sections of the Property Registry have been computerized by the new
system identified as Karibe, through which the historical volumes containing the data
related to the inscribed properties and with the documents presented and pending
registration were digitized. Since April 25, 2016, the Department of Justice
discontinued the Tool-Kit and Agora System in most of the Sections of the Registry,
which was used to search for documents submitted and pending registration and
preparation of title search and other documents. There is also a delay in the entry
of information to the System to this date. In addition to this, the Federal and State
Seizures are now entered and electronically provided by the Central Office of the
Land Registry in the Department of Justice, without being able to corroborate the
control books and with many errors which makes the location impossible. We are not
responsible for errors that may result in this title search due to errors and/or
omissions of the Registry and/or its employees, when entering the data in the system.*

**EAGLE TITLE AND OTHER SERVICES, INC.**

*Authorized signature*

tm/mv/**F**

I, Elías Díaz Bermúdez, of legal age, single and neighbor of San
Juan, Puerto Rico, under solemn oath declare:

1. That my name and personal circumstances are the above
mentioned.

2. That on December 26, 2019, I examined the books and
files of The Property Registry of Puerto Rico and prepared
the attached title study which makes part of this
affidavit.

3. That the attached title study correctly represents in
all its parts the status of the above described
property in The Property Registry of Puerto Rico.

I, the undersigned, hereby swear that the facts herein stated are
true.

In Guaynabo, Puerto Rico, this 5 day of November of 2020.

_____
Elías Díaz Bermúdez

AFFIDAVIT NUMBER 4,364

Sworn and subscribed to before me by Elias Díaz Bermúdez of
the aforementioned personal circumstances, whom I
personally know.

In Guaynabo, Puerto Rico, this 5 day of November of 2020.



NOTARY PUBLIC

RECIBO

4019-021651013

9397
10/28/2020
$5.00

Sello de Asistencia Legal
80093-2020-1028-46942148

# TITLE SEARCH

ESTUDIOS DE TITULO
SEGUROS DE TITULO

P.O. BOX 1467, TRUJILLO ALTO, PR. 00977-1467
TELS. (787) 748.1130 / 748-8577 • FAX (787) 748-1143
estudios@eagletitlepr.com

**CLIENT:  MIRIAM LOTTI DE JESUS**          **REF: 1521.247**
                                           **BY: TAIMARY ESCALONA**

**PROPERTY NUMBER:** 2,027, recorded at page 110 of volume 51 of Peñuelas, Registry of Ponce, Puerto Rico, section II.

**DESCRIPTION: (As it is recorded in the Spanish language)**

**RUSTICA:** Parcela de terreno radicada en el barrio Rucio de Peñuelas, Puerto Rico, con cabida de **doce y medio céntimos de cuerda, más o menos, equivalentes a cuatro áreas, noventiuna centiáreas y treinta miliáreas**, en lindes por el **NORTE** y **ESTE**, con terrenos de don Dionisio Lotti Luchessi; y por el **SUR** y **OESTE**, con el resto de la finca de donde se segregó, propiedad de don Efraín Santos y Santos y hoy de don Dionisio Lotti Luchessi.

**TITLE:**

This property is registered in favor of MIRIAM LOTTI DE JESUS, single, who acquired it as follows:

One part by adjudication of inheritance, value of $25,000.00, pursuant to deed #11, executed in Ponce, Puerto Rico, on February 21, 1949, before Rafael Hernandez Matos Notary Public; ratified by deed #47, executed in Ponce, Puerto Rico on August 21, 1972 before Antonio Santiago Droz Notary Public, recorded at overleaf of page 110 of volume 51 of Peñuelas, property number 2,027, 2nd, inscription.
**Presented on November 24, 1971**
**Recorded on May 18, 1973**

Other part by purchase of participations of this and other properties of Iris Celeste and Milagros Lotti De Jesús for the total amount of $10,000.00, responding this property by $500.00, pursuant to deed #19, executed in San Juan, Puerto Rico on February 22, 1974 before Vicente Rodriguez Feliciano Notary Public, recorded at page 114 of volume 51 of Peñuelas, property number 2,025, 3rd, inscription.
**Presented on June 18, 1974**
**Recorded on October 21, 1975**

**LIENS AND ENCUMBRANCES:**

I.  By reason of its origin this property is free of liens and encumbrances

II. By reason of itself this property is encumbered by the following:

1.  **MORTGAGE:** Constituted by Miriam Lotti De Jesús, over this and other properties, in favor of United States of America, acting as Farmer Home Administration, in the original principal amount of $16,170.00, with 8 1/2% annual interests, due on 40 years, constituted by deed #79, executed in Ponce, Puerto Rico, on May 9, 1979, before Notary Public René F. Sotomayor Santos, recorded at overleaf of page 6 of volume 101 of Peñuelas, property number 2,027, 6th, inscription. Conditions.
    **Presented on May 16, 1979**
    **Recorded on May 22, 1979**

Este documento NO es una póliza de Seguro de Título, por lo cual no debe utilizarse como tal. La responsabilidad de la entidad que preparó este Estudio de Título, está limitada a la cantidad pagada por la preparación de dicho Estudio de Título. Para completa protección deben requerir una póliza de Seguro de Título.

Eagle Title & Other Services, Inc.

PAGE #2
PROPERTY #2,027

**REVIEWED:**

Federal Attachments, Commonwealth of Puerto Rico Tax Liens,
Judgments and Daily Log up to December 26th, 2019.

*NOTICE: The Sections of the Property Registry have been computerized by the new system identified as Karibe, through which the historical volumes containing the data related to the inscribed properties and with the documents presented and pending registration were digitized. Since April 25, 2016, the Department of Justice discontinued the Tool-Kit and Agora System in most of the Sections of the Registry, which was used to search for documents submitted and pending registration and preparation of title search and other documents. There is also a delay in the entry of information to the System to this date. In addition to this, the Federal and State Seizures are now entered and electronically provided by the Central Office of the Land Registry in the Department of Justice, without being able to corroborate the control books and with many errors which makes the location impossible. We are not responsible for errors that may result in this title search due to, errors and/or omissions of the Registry and/or its employees, when entering the data in the system.*

**EAGLE TITLE AND OTHER SERVICES, INC.**

_____
*Authorized signature*

tm/mv/**F**

I, Elías Díaz Bermúdez, of legal age, single and neighbor of San Juan, Puerto Rico, under solemn oath declare:

   1. That my name and personal circumstances are the above mentioned.

   2. That on December 26, 2019, I examined the books and files of The Property Registry of Puerto Rico and prepared the attached title study which makes part of this affidavit.

   3. That the attached title study correctly represents in all its parts the status of the above described property in The Property Registry of Puerto Rico.

I, the undersigned, hereby swear that the facts herein stated are true.

In Guaynabo, Puerto Rico, this  5  day of  November  of 2020.

_____
Elías Díaz Bermúdez

AFFIDAVIT NUMBER 4,365

Sworn and subscribed to before me by Elías Díaz Bermúdez of the aforementioned personal circumstances, whom I personally know.

In Guaynabo, Puerto Rico, this  5  day of  November  of 2020.



NOTARY PUBLIC

ESTUDIOS DE TITULO
SEGUROS DE TITULO

P.O. BOX 1467, TRUJILLO ALTO, P.R. 00977-1467
TELS. (787) 748-1130 / 748-8577 • FAX (787) 748-1143
estudios@eagletitlepr.com

Este documento NO es una póliza de Seguro de Título, por lo cual no debe utilizarse como tal. La responsabilidad de la entidad que preparó este Estudio de Título, está limitada a la cantidad pagada por la preparación de dicho Estudio de Título. Para completa protección deben requerir una póliza de Seguro de Título.

Eagle Title & Other Services, Inc.

# TITLE SEARCH

**CLIENT:**  MIRIAM LOTTI DE JESÚS            **REF: 1521.247**
                                             **BY: TAIMARY ESCALONA**

**PROPERTY NUMBER:** 2,031, recorded at page 140 of volume 51 of Peñuelas, Registry of Ponce, Puerto Rico, section II.

**DESCRIPTION: (As it is recorded in the Spanish language)**

**RUSTICA:** Finca radicada en el Barrio Rucio del término municipal de Peñuelas, compuesta según sus títulos de treinta y seis cuerdas veinticinco céntimos, pero mensurada por el agrimensor don Alberto Rodríguez Anfriani resultó contener una cabida total de **treinta y dos cuerdas ochocientos noventiocho milésimas, iguales de doce hectáreas, noventa áreas, sesentiseis centiáreas y siete miliáreas**, bajos los puntos y colindancias actuales que figuran en el plano levantado por dicho ingeniero, siendo sus colindancias las siguientes: por el **NORTE**, linda con terrenos de Sucesión A.J. Bartolomei, los de Eligio de Jesús y de Sucesión de Alfredo Toro, dividido éstos últimos por un camino vecinas; por el **SUR**, colinda con tierras de Eliseo Santos, de Efraín Santos; por el **ESTE** colinda con tierras de Efraín Santos, Sucesión A.J. Bartolomei y una quebrada; y por el **OESTE**, colinda con tierras de Edelmiro Díaz Santos, Santiago Santos y Sucesión de Alfredo Toro, separadas por el camino vecinal en la cuchilla. Contiene esta finca una casa de madera y zinc para vivienda y otra casa de madera y zinc, para agregado.

**ORIGIN:**
It is formed by grouping of some properties.

**TITLE:**
This property is registered in favor of MIRIAM LOTTI DE JESUS, single, who acquired it as follows:

One part by adjudication of inheritance, value of $3,973.40, pursuant to deed #11, executed in Ponce, Puerto Rico, on February 21, 1949, before Rafael Hernandez Matos Notary Public; ratified by deed #47, executed in Ponce, Puerto Rico on August 21, 1972 before Antonio Santiago Droz Notary Public, recorded at overleaf of page 143 of volume 51 cf Peñuelas, property number 2,027, 2nd, inscription.
**Presented on November 24, 1971**
**Recorded on May 18, 1973**

Other part by purchase of participations of this and other properties of Iris Celeste and Milagros Lotti De Jesús, for the total amount of $10,000.00, responding this property by $9,000.00, pursuant to deed #19, executed in San Juan, Puerto Rico on February 22, 1974 before Vicente Rodriguez Feliciano Notary Public, recorded at page 27 of volume 91 of Peñuelas, property number 2,031, 3rd, inscription.
**Presented on June 18, 1974**
**Recorded on October 21, 1975**

**LIENS AND ENCUMBRANCES:**
I.   By reason of its origin this property is free of liens and encumbrances

II.  By reason of itself this property is encumbered by the following:

1.   **MORTGAGE:** Constituted by Miriam Lotti De Jesús, over this and other properties, in favor of United States of America, acting as Farmer Home Administration, in the original principal amount of $16,170.00, with 8 1/2% annual interests, due on 40 years, constituted by deed #79, executed in Ponce, Puerto Rico, on May 9, 1979, before Notary Public René F. Sotomayor Santos, recorded at page 30 of volume 91 of Peñuelas, property number 2,031, 7th, inscription. Conditions.
     **Presented on May 16, 1979**
     **Recorded on May 22, 1979**

**ESTUDIOS DE TITULO**
**SEGUROS DE TITULO**

P.O. BOX 1467, TRUJILLO ALTO, P.R. 00977-1467
TELS. (787) 748-1130 / 748-8577 • FAX (787) 748-1143
estudios@eagletitlepr.com

Este documento NO es una póliza de Seguro de Título, por lo cual no debe utilizarse como tal. La responsabilidad de la entidad que preparó este Estudio de Título, está limitada a la cantidad pagada por la preparación de dicho Estudio de Título. Para completa protección deben requerir una póliza de Seguro de Título.


Eagle Title & Other Services, Inc.

PAGE #2
PROPERTY #2,031

ESTUDIOS DE TITULO
SEGUROS DE TITULO

P.O. BOX 1467, TRUJILLO ALTO, P.R. 00977-1467
TELS. (787) 748.1130 / 748-8577 • FAX (787) 748-1143
estudios@eagletitlepr.com

2. **MORTGAGE:** Constituted by Miriam Lotti De Jesús, in favor of Bearer, in the original principal amount of $16,800.00, with 15% annual interests, due on August 10, 1985, constituted by deed #68, executed in Bayamón, Puerto Rico, on August 10, 1984, before Notary Public Héctor A. Sostre Narváez, recorded at overleaf of page 31 of volume 91 of Peñuelas, property number 2,031, 8th, inscription.
   **Presented on August 17, 1984**
   **Recorded on August 23, 1984**

3. **MORTGAGE:** Constituted by Miriam Lotti De Jesús, in favor of La Coop. de Ahorro y Crédito de Ponce, in the original principal amount of $5,000.00, with 14% annual interests, due on presentation, constituted by deed #8, executed in Ponce, Puerto Rico, on April 10, 1985, before Notary Public Manuel B. Caballer, recorded at page 289 of volume 128 of Peñuelas, property number 2,031, 9th, inscription.
   **Presented on October 11, 1985**
   **Recorded on October 14, 1985**

**REVIEWED:**

Federal Attachments, Commonwealth of Puerto Rico Tax Liens, Judgments and Daily Log up to December 26th, 2019.

*NOTICE: The Sections of the Property Registry have been computerized by the new system identified as Karibe, through which the historical volumes containing the data related to the inscribed properties and with the documents presented and pending registration were digitized. Since April 25, 2016, the Department of Justice discontinued the Tool-Kit and Agora System in most of the Sections of the Registry, which was used to search for documents submitted and pending registration and preparation of title search and other documents. There is also a delay in the entry of information to the System to this date. In addition to this, the Federal and State Seizures are now entered and electronically provided by the Central Office of the Land Registry in the Department of Justice, without being able to corroborate the control books and with many errors which makes the location impossible. We are not responsible for errors that may result in this title search due to errors and/or omissions of the Registry and/or its employees, when entering the data in the system.*

**EAGLE TITLE AND OTHER SERVICES, INC.**

*Authorized signature*

tm/mv/**F**

Este documento NO es una póliza de Seguro de Título, por lo cual no debe utilizarse como tal. La responsabilidad de la entidad que preparó este Estudio de Título, está limitada a la cantidad pagada por la preparación de dicho Estudio de Título. Para completa protección deben requerir una póliza de Seguro de Título.



I, Elías Díaz Bermúdez, of legal age, single and neighbor of San Juan, Puerto Rico, under solemn oath declare:

1. That my name and personal circumstances are the above mentioned.

2. That on December 26, 2019, I examined the books and files of The Property Registry of Puerto Rico and prepared the attached title study which makes part of this affidavit.

3. That the attached title study correctly represents in all its parts the status of the above described property in The Property Registry of Puerto Rico.

I, the undersigned, hereby swear that the facts herein stated are true.

In Guaynabo, Puerto Rico, this ___5___ day of __November__ of 2020.

_____
Elías Díaz Bermúdez

AFFIDAVIT NUMBER __4636__

Sworn and subscribed to before me by Elías Díaz Bermúdez of the aforementioned personal circumstances, whom I personally know.

In Guaynabo, Puerto Rico, this ___5___ day of __November__ of 2020.

_____
NOTARY PUBLIC

ESTADO LIBRE ASOCIADO DE PUERTO RICO
(COMMONWEALTH OF PUERTO RICO)

DEPARTAMENTO DE SALUD
(DEPARTMENT OF HEALTH)
REGISTRO DEMOGRAFICO
(DEMOGRAPHIC REGISTRY)
CERTIFICACION DE DEFUNCION
(CERTIFICATION OF DEATH)

NUMERO  D330256

| | |
|---|---|
| LIBRO NUMERO (VOLUME NUMBER) **300** | FOLIO NUMERO (FOLIO NUMBER) **00000** |

ACTA NUMERO (CERTIFICATE NUMBER)   **538**

NOMBRE DEL FALLECIDO (DECEASED NAME)   **MYRIAM LOTTI DE JESUS**

NUMERO DE SEGURO SOCIAL (SOCIAL SECURITY NUMBER)   **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**
SEXO (SEX)   VARON (MALE) ☐   HEMBRA (FEMALE) **XX**

ESTADO CIVIL (MARITAL STATUS)   NUNCA SE CASO (NEVER MARRIED) ☐   CASADO (MARRIED) ☐   VIUDO (WIDOWED) **XX**   DIVORCIADO (DIVORCED) ☐

NOMBRE DEL CONYUGE (SPOUSE'S NAME)   **RAMON PIAZZA**

FECHA DE DEFUNCION (DATE OF DEATH)   **24 MARZO 2006**
FECHA DE INSCRIPCION (DATE FILED)   **27 MARZO 2006**

LUGAR DE DEFUNCION (PLACE OF DEATH)   **PONCE, PURTO RICO**

CAUSA DE MUERTE (IMMEDIATE CAUSE)   **CARDIO RESPIRATORY FAILURE**
¿FUE EMBALSAMADO? (WAS EMBALMED?)   **XX**

FECHA DE NACIMIENTO (DATE OF BIRTH)   **4 JULIO 1935**
EDAD (AGE)   **70 AÑOS**

LUGAR DE NACIMIENTO (PLACE OF BIRTH)   **PONCE, PUERTO RICO**

NOMBRE DEL PADRE (FATHER'S NAME)   **DIONISIO LOTTI**

NOMBRE DE LA MADRE (MOTHER'S NAME)   **REYES DE JESUS**

MUNICIPIO DE (MUNICIPALITY OF)   **PONCE,**   PUERTO RICO
FECHA DE EXPEDICION (DATE ISSUED)   **29 MARZO 2006**

ENCARGADO DEL REGISTRO (LOCAL REGISTRAR)   **JORGE PACHECO ROJAS**

FIRMA (SIGNATURE)   _[signature]_

ESTE ES UN ABSTRACTO DEL CERTIFICADO DE DEFUNCION OFICIALMENTE INSCRITO EN EL REGISTRO DEMOGRAFICO DE PUERTO RICO BAJO LA AUTORIDAD CONFERIDA POR LA LEY 24 DEL 22 DE ABRIL DE 1931.

THIS IS AN ABSTRACT OF THE RECORD FILED; THE DEMOGRAPHIC REGISTRY OF PUERTO RICO ISSUED UNDER THE AUTHORITY OF LAW 24, APRIL 22, 1931.

DEPARTAMENTO DE SALUD
REGISTRO DEMOGRAFICO
DISTRITUM
PONCE

SECRETARIO DE SALUD (SECRETARY OF HEALTH)

DEPARTAMENTO DE SALUD
GOBIERNO DE PUERTO RICO

DIRECTOR REGISTRO DEMOGRAFICO (STATE REGISTRAR)

*Dando Salud... a tu Vida.*
ADVERTENCIA: Cualquier alteración o borradura cancela esta certificación.

WARNING: Any alteration or erasure voids this certification.

/ 1521.247

Exhibit 7

# UNITED STATES DEPARTMENT OF AGRICULTURE
# FARM SERVICE AGENCY

654 Muñoz Rivera Avenue
654 Plaza Suite #829
San Juan, PR 00918

Borrower:     Lotti De Jesus, Myriam              Case No:     63-033-6895

### *CERTIFICATION OF INDEBTEDNESS*

I, Carlos J. Morales Lugo, of legal age, single, a resident of San Juan, Puerto Rico, in my official capacity as
Loan Resolution Task Force Contractor of the *Farm Service Agency*, United States Department of Agriculture (USDA), state that:

- The borrower's indebtedness is as shown in the following Statement of Account, according
  to information obtained from all available records at the USDA-Farm Service Agency:

### *Statement of Account as of*     *September 8, 2020*

| Loan Number | | 29-01 |
|---|---|---|
| Note Amount | $ | 16,170.00 |
| Date of Last Payment | | 9/26/1989 |
| Principal Balance | $ | 16,170.00 |
| Unpaid Interest | $ | 50,702.32 |
| Misc. Charges | $ | 2,216.10 |
| Total Balance | $ | 69,088.42 |
| Daily Interest Accrual | $ | 4.2817 |
| Amount Delinquent | $ | 69,088.42 |
| Years Delinquent | | Fully matured |

- The information in the above Statement of Account in affiant's opinion is a true and correct statement
  of the aforementioned account and to this date remains due and unpaid.

- The defendant is neither a minor, nor incompetent, nor in the military service of the
  United States of America.

- The above information is true and correct to the best of my knowledge and belief, and is made under
  penalty of perjury as allowed by 28 U.S.C. 1746.

*Carlos J. Morales*

Digitally signed by CARLOS MORALES (Affiliate)
DN: c=US, o=U.S. Government, ou=Department
of Agriculture,
0.9.2342.19200300.100.1.1=12001003816118,
cn=CARLOS MORALES (Affiliate)
Date: 2020.09.08 14:27:06 -04'00'
Adobe Acrobat version: 2020.012.20041

Carlos J. Morales Lugo
LRTF Contractor
September 8, 2020

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Puerto Rico

| | | |
|---|---|---|
| United States of America,<br>acting through the<br>United States Department of Agriculture | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| REYES DE JESUS, et als. | ) | FORECLOSURE OF MORTGAGE |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  IRIS LOTTI DE JESUS
Calle Vives #183          Rucio Ward
Ponce, PR 00733          Peñuelas, P.R. 00624

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

JUAN CARLOS FORTUÑO FAS
P.O. BOX 3908
GUAYNABO PR 00970

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*MARIA ANTONGIORGI-JORDAN, ESQ.*
*CLERK OF COURT*

Date: _____          _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ 0 .


I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

### District of Puerto Rico

| | |
|---|---|
| United States of America, acting through the United States Department of Agriculture <br><br> *Plaintiff(s)* <br><br> v. <br><br> REYES DE JESUS, et als. <br><br> *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No. <br><br> FORECLOSURE OF MORTGAGE |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   MILAGROS LOTTI DE JESUS
Calle Vives #183          Rucio Ward
Ponce, PR 00733          Peñuelas, P.R. 00624

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

JUAN CARLOS FORTUÑO FAS
P.O. BOX 3908
GUAYNABO PR 00970

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*MARIA ANTONGIORGI-JORDAN, ESQ.*
*CLERK OF COURT*

Date: _____        _____
                                                                          *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ 0 .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Puerto Rico

| | | |
|---|---|---|
| United States of America,<br>acting through the<br>United States Department of Agriculture | ) ) ) ) | |
| _____ | ) | |
| *Plaintiff(s)* | ) | Civil Action No. |
| v. | ) | |
| REYES DE JESUS, et als. | ) | FORECLOSURE OF MORTGAGE |
| | ) | |
| _____ | ) ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* REYES DE JESUS
Calle Vives #183          Rucio Ward
Ponce, PR 00733          Peñuelas, P.R. 00624

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

JUAN CARLOS FORTUÑO FAS
P.O. BOX 3908
GUAYNABO PR 00970

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*MARIA ANTONGIORGI-JORDAN, ESQ.*
*CLERK OF COURT*

Date: _____          _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ 0 .


I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

# UNITED STATES DISTRICT COURT

## DISTRICT OF PUERTO RICO

## CATEGORY SHEET

**You must accompany your complaint with this Category Sheet, and the Civil Cover Sheet (JS-44).**

Attorney Name (Last, First, MI):   | Fortuño, Juan Carlos

USDC-PR Bar Number:   | 211913

Email Address:   | jcfortuno@fortuno-law.com

1.  Title (caption) of the Case (provide only the names of the <u>first</u> party on <u>each</u> side):

    Plaintiff:   | UNITED STATES OF AMERICA, acting through the USDA

    Defendant:   | REYES DE JESUS; ET ALS.

2.  Indicate the category to which this case belongs:

    ☒ Ordinary Civil Case
    ☐ Social Security
    ☐ Banking
    ☐ Injunction

3.  Indicate the title and number of related cases (if any).

    N/A

4.  Has a prior action between the same parties and based on the same claim ever been filed before this Court?

    ☐ Yes
    ☒ No

5.  Is this case required to be heard and determined by a district court of three judges pursuant to 28 U.S.C. § 2284?

    ☐ Yes
    ☒ No

6.  Does this case question the constitutionality of a state statute?  (See, Fed.R.Civ. P. 24)

    ☐ Yes
    ☒ No

Date Submitted:   | November 10, 2020

rev. Dec. 2009

Print Form     Reset Form

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| UNITED STATES OF AMERICA | REYES DE JESUS, et als. |

| **(b)** County of Residence of First Listed Plaintiff | County of Residence of First Listed Defendant  Peñuelas, P.R. |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Juan C. Fortuño Fas
Po Box 3908, Guaynabo, PR 00970
Tel. 787-751-5290

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☒ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | Protection Act |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | Exchange |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 890 Other Statutory Actions |
| | Medical Malpractice | | Leave Act | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 895 Freedom of Information |
| ☒ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | State Statutes |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Consolidated Farm & Development Act, 7 USC 1921, et seq. & 28 USC 1345

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
66,872.32

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE November 10, 2020

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____